## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

JAMES MASSIE, ALEXANDRIA
CHEVALIER, KEITH SKEEN, ANTONIO
DUCKSWORTH, SR., BILLY CABLE,
DAJUANA REYNOLDS, DANTZLER
CATO, JAMAL ALLEN, JOHNSON
BRACKINS, JONATHAN KUBICHEK,
FERNANDO WARREN, WESLEY
WORTHY, SR., RUFUS AUSTIN, DAVID
STIEGELMEYER, II, DAVID
BLANCHARD, WILLIAM HARRIS,
MICHAEL JOYNER, KELLY COTE,
PHEVOTT MADDEN, MICHAEL
WEGENER, and RYAN PIERCE, individually
and on behalf of all others similarly situated,

        Plaintiffs,

    v.

POSTAL FLEET SERVICES, INC.,
THE STAGELINE COMPANY, and
VILANO EMPLOYMENT SERVICES, INC.,

and

DON DORRIS, LESLIE DORRIS, and
BRENDA DORRIS,

        Defendants.

Case No.:

3:21-cv-00618-MMH-PDB

**JURY TRIAL DEMANDED**

*ELECTRONICALLY FILED*

## AMENDED COMPLAINT -
## COLLECTIVE AND CLASS ACTION

Named Plaintiffs, JAMES MASSIE, ALEXANDRIA CHEVALIER, KEITH SKEEN, ANTONIO DUCKSWORTH, SR., BILLY CABLE, DAJUANA REYNOLDS, DANTZLER CATO, JAMAL ALLEN, JOHNSON BRACKINS, JONATHAN KUBICHEK, FERNANDO WARREN, WESLEY WORTHY, SR., RUFUS AUSTIN, DAVID STIEGELMEYER, II, DAVID BLANCHARD, WILLIAM HARRIS, MICHAEL JOYNER, KELLY COTE, PHEVOTT MADDEN, MICHAEL WEGENER, and RYAN PIERCE, individually and on behalf of all others similarly situated (collectively "Named Plaintiffs"), by and through the undersigned counsel, hereby file this Amended Complaint - Collective and Class Action ("Amended Complaint"), against POSTAL FLEET SERVICES, INC. ("PFS"), THE STAGELINE COMPANY ("Stageline"), VILANO EMPLOYMENT SERVICES, INC. ("Vilano," and collectively with PFS and Stageline, referred to herein as "Corporate Defendants"), and DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS ("Individual Defendants," and collectively with the Corporate Defendants, referred to herein as "Defendants"), and allege violations of the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), as well as corresponding wage and hour and/or breach of contract laws in certain states as asserted in this lawsuit, to wit, the Pennsylvania Minimum Wage Act of 1968, 43 P.S. § 333.101 *et seq.* ("PMWA"), the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("PWPCL"); New Jersey

2

Wage and Hour Law, N.J. Stat. § 34:11-56a *et seq*. ("NJWHL"), New Jersey Wage Payment Law, N.J. Stat. § 34:11-4.1 *et seq*. ("NJWPL"); Kentucky Wages and Hour Act, Ky. Rev. Stat. Ann. § 337.01 et seq. ("KWHA"); Nebraska Wage and Hour Act, Neb. Rev. Stat. Ann. § 48-1201 *et seq.* ("NWHA"), Nebraska Wage Payment and Collection Act,  Neb. Rev. Stat. Ann. § 48-1228 *et seq.* ("NWPCA"); Minnesota Fair Labor Standards Act, Minn. Stat. Ann. § 177.21 *et seq.* ("MFLSA"), Minnesota Wage Payment and Recordkeeping Law, Minn. Stat. Ann. § 181.001 *et seq.* ("MWPRL"); Missouri Minimum Wage Law, Mo. Ann. Stat. § 290.500 *et seq.* ("MMWL"); Georgia Minimum Wage Law, Ga. Code Ann. § 34-4-1 *et seq.* ("GMWL"); South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.* ("SCPWA"); Vermont Minimum Wage Law, Vt. Stat. Ann. tit. 21, § 381 *et seq.* ("VMWL"); Virginia Minimum Wage Act, Va. Code Ann. § 40.1-28.8 *et seq.* ("VMWA"), Virginia Wage Payment Act, Va. Code Ann. § 40.1-29 *et seq.* ("VWPA"); Ohio Minimum Wage Law, Ohio Rev. Code Ann. § 4111.01 et seq. ("OMWL"), Ohio Prompt Pay Act, Ohio Rev. Code Ann. § 4113.15 *et seq.* ("OPPA"); New Hampshire Minimum Wage Law, N.H. Rev. Stat. Ann. § 279:1 *et seq.* ("NHMWL"), New Hampshire Wage Payment Law, N.H. Rev. Stat. Ann. § 275:42 *et seq.* ("NHWPL"); Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-431 *et seq.* ("MWHL"), Maryland Wage Payment & Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL"); Kansas Wage

Payment Act, Kan. Stat. Ann. § 44-313 *et seq.* ("KWPA"); Iowa Minimum Wage Law, Iowa Code Ann. § 91D.1 *et seq.* ("IMWL"), Iowa Wage Payment Collection Law, Iowa Code Ann. § 91A.1 *et seq.* ("IWPCL"), and the Michigan Workforce Opportunity Wage Act, Mich. Comp. Laws Ann. § 408.411 *et seq.* ("MWOWA"), as follows:

## PARTIES

### A.   Named Plaintiffs

**James Massie**

1.     Mr. Massie was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Massie is a resident of the Commonwealth of Pennsylvania, residing at 501 Ninth Street, New Cumberland, Cumberland County, Pennsylvania. Mr. Massie's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 1-2.

**Alexandria Chevalier**

2.     Ms. Chevalier was employed as a Truck Driver for Defendants until in or about June 2021.  Ms. Chevalier is a resident of the State of New Jersey, residing at 263 Alpine Way, South Amboy, Middlesex County, New Jersey.   Ms. Chevalier's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 44.

***Keith Skeen***

3.      Mr. Skeen was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Skeen is a resident of the Commonwealth of Kentucky, residing at 180 Stamper Street, Corbin, Whitley County, Kentucky.  Mr. Skeen's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

***Antonio Ducksworth, Sr.***

4.      Mr. Ducksworth was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Ducksworth is a resident of the State of Mississippi, residing at 2115 21st Avenue, Gulfport, Harrison County, Mississippi.  Mr. Ducksworth's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

***Billy Cable***

5.      Mr. Cable was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Cable is a resident of the State of Tennessee, residing at 1212 Amerine Road, Maryville, Blount County, Tennessee.  Mr. Cable's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 23.

***Dajuana Reynolds***

6.      Ms. Reynolds was employed as a Truck Driver for Defendants until in or about June 2021.  Ms. Reynolds is a resident of the State of Nebraska, residing at

7524 North 34th Street, Omaha, Douglas County, Nebraska.  Ms. Reynolds Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

**Dantzler Cato**

7.      Ms. Cato was employed as a Truck Driver for Defendants until in or about June 2021.  Ms. Cato is a resident of the State of Louisiana, residing at 232 Coretta Drive, Avondale, Jefferson Parish, Louisiana.  Ms. Cato's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

**Jamal Allen**

8.      Mr. Allen was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Allen is a resident of the State of Michigan, residing at 29025 Richard Street, Westland, Wayne County, Michigan.  Mr. Allen's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 25.

**Johnson Brackins**

9.      Mr. Brackins was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Brackins is a resident of the State of Texas, residing at 6502 Firnat Street, Houston, Harris County, Texas.  Mr. Brackins' Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 21.

*Jonathan Kubichek*

10.    Mr. Kubichek was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Kubichek is a resident of the State of Minnesota, residing at 825 4th Street NE, Apt. 203, Staples, Todd County, Minnesota.  Mr. Kubichek's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 21.

*Fernando Warren*

11.    Mr. Warren was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Warren is a resident of the State of Missouri, residing at 3830 Woodcrest Drive, Florissant, St. Louis County, Missouri.   Mr. Warren's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 27.

*Wesley Worthy, Sr.*

12.    Mr. Worthy was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Worthy is a resident of the State of Georgia, residing at 119 Boyd Wright Road, Ludowici, Long County, Georgia.  Mr. Worthy's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 35.

### Rufus Austin

13.     Mr. Austin was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Austin is a resident of the State of Alabama, residing at 6417 Stone Mill Row, Mobile, Mobile County, Alabama.  Mr. Austin's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

### David Stiegelmeyer, II

14.     Mr. Stiegelmeyer was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Stiegelmeyer is a resident of the State of South Carolina, residing at 115 Old Tree Road, Goose Creek, Berkeley County, South Carolina.  Mr. Stiegelmeyer's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 28.

### David Blanchard

15.     Mr. Blanchard was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Blanchard is a resident of the State of Vermont, residing at 38 Central Street, Randolph, Orange County, Vermont.  Mr. Blanchard's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 44.

### William Harris

16.     Mr. Harris was employed as a Truck Driver for Defendants until in or about June 2021.   Mr. Harris is a resident of the Commonwealth of Virginia,

8

residing at 3820 Fleming Avenue NE, Roanoke, Virginia.  Mr. Harris' Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 27.

**Michael Joyner**

17.     Mr. Joyner was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Joyner is a resident of the State of Ohio, residing at 2021 Wesleyan Road, Dayton, Montgomery County, Ohio.  Mr. Joyner' Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 27.

**Kelly Cote**

18.     Ms. Cote was employed as a Truck Driver for Defendants until in or about June 2021.  Ms. Cote is a resident of the State of New Hampshire, residing at 122 Twistback Road, Claremont, Sullivan County, New Hampshire.  Ms. Cote's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 25.

**Phevott Madden**

19.     Mr. Madden was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Madden is a resident of the State of Maryland, residing at 5548 Karen Elaine Drive, #1431, New Carrollton, Prince George's County, Maryland.  Mr. Madden's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 15.

*Michael Wegener*

20.     Mr. Wegener was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Wegener is a resident of the State of Kansas, residing at 400 South Moonlight Road, Apt. #23, Gardner, Johnson County, Kansas.   Mr. Wegener's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 24.

*Ryan Pierce*

21.     Mr. Pierce was employed as a Truck Driver for Defendants until in or about June 2021.  Mr. Pierce is a resident of the State of Iowa, residing at 2943 Trenton Avenue, Orient, Adair County, Iowa.  Mr. Pierce's Consent to Join the collective action aspect of this lawsuit has been previously filed as Doc. 24.

22.     At all times relevant to this Complaint, Named Plaintiffs, and all those similarly situated were "employees" of Defendants for purposes of the FLSA and corresponding wage and hour and/or breach of contract laws in certain states as asserted in this lawsuit, and were individual employees engaged in commerce as required by the FLSA, 29 U.S.C. §§ 206 and 207.

**B.**    **Corporate Defendants**

*Defendant Postal Fleet Services, Inc.*

23.    PFS is a corporation formed under the laws of the State of Delaware, with a corporate headquarters address of 2808 North 5th Street, Suite 501, St. Augustine, St. Johns County, Florida.

24.    At all times relevant to this Complaint, PFS operated as a surface transportation provider for the United States Postal Service ("USPS") throughout several of the United States, including Florida, Pennsylvania, New Jersey, Kentucky, Mississippi, Tennessee, Nebraska, Louisiana, Michigan, Texas, Minnesota, Missouri, Georgia, Alabama, South Carolina, Vermont, Virginia, Ohio, New Hampshire, Maryland, Kansas, and Iowa.

25.    At all times relevant to this Complaint, PFS has been an employer within the meaning of the FLSA and corresponding wage and hour and/or breach of contract laws in certain states as asserted in this lawsuit.

26.    At all times relevant to this action, PFS acted as the employer of each of the Named Plaintiffs.

27.    At all times relevant to this Complaint, PFS has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

28.    At all times relevant to this Complaint, PFS has been an enterprise engaged in commerce or in the production of goods for commerce within the

meaning of the FLSA because it has engaged employees in commerce.  29 U.S.C. § 203(s)(1).

29.     PFS has had, and continues to have, an annual gross income of sales made or business done of not less than $500,000.  29 U.S.C. § 203(s)(1).

**Defendant The Stageline Company**

30.     Stageline is a corporation formed under the laws of the State of Florida, with a corporate headquarters address of 2808 North 5th Street, Suite 504, St. Augustine, St. Johns County, Florida.

31.     At all times relevant to this Complaint, Stageline, as part of PFS's corporate family, operated as a surface transportation provider for the United States Postal Service throughout several of the United States, including Florida, Pennsylvania, New Jersey, Kentucky, Mississippi, Tennessee, Nebraska, Louisiana, Michigan, Texas, Minnesota, Missouri, Georgia, Alabama, South Carolina, Vermont, Virginia, Ohio, New Hampshire, Maryland, Kansas, and Iowa.

32.     At all times relevant to this Complaint, Stageline has been an employer within the meaning of the FLSA and corresponding wage and hour laws in certain states as asserted in this lawsuit.

33.     At all times relevant to this action, Stageline acted as the employer of each of the Named Plaintiffs.

34.     At all times relevant to this Complaint, Stageline has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

35.     At all times relevant to this Complaint, Stageline has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA because it has engaged employees in commerce.   29 U.S.C. § 203(s)(1).

36.     Stageline has had, and continues to have, an annual gross income of sales made or business done of not less than $500,000.  29 U.S.C. § 203(s)(1).

**Defendant Vilano Employment Services, Inc.**

37.     Vilano is a corporation formed under the laws of the State of Florida, with a corporate headquarters address of 2808 North 5th Street, Suite 501, St. Augustine, St. Johns County, Florida.

38.     At all times relevant to this Complaint, Vilano, as part of PFS's corporate family, operated as a staffing and payroll service provider for commercial trucking companies, including PFS and Stageline.

39.     At all times relevant to this Complaint, Vilano has been an employer within the meaning of the FLSA and corresponding wage and hour laws in certain states as asserted in this lawsuit.

40.     At all times relevant to this action, Vilano acted as the employer of each of the Named Plaintiffs.

41.     At all times relevant to this Complaint, Vilano has been an enterprise within the meaning of the FLSA, 29 U.S.C. § 203(r).

42.     At all times relevant to this Complaint, Vilano has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of the FLSA because it has engaged employees in commerce.  29 U.S.C. § 203(s)(1).

43.     Vilano has had, and continues to have, an annual gross income of sales made or business done of not less than $500,000.  29 U.S.C. § 203(s)(1).

### C.     <u>Individual Defendants</u>

#### *Defendant Don Dorris*

44.     Don Dorris, upon information and belief, is the President of PFS, has an ownership interest in each of the Corporate Defendants, is employed or otherwise engaged in a managerial capacity with each of the Corporate Defendants, and is a resident of the State of Florida.

45.     At all times relevant to this Complaint, Don Dorris has been an employer within the meaning of the FLSA and the wage and hour laws in certain states as asserted in this lawsuit.

46.     At all times relevant to this action, Don Dorris acted as the employer of each of the Named Plaintiffs.

### Defendant Leslie Dorris

47.     Leslie Dorris, upon information and belief, is the President of both Stageline and Vilano, has an ownership interest in each of the Corporate Defendants, is employed or otherwise engaged in a managerial capacity with each of the Corporate Defendants, and is a resident of the State of Florida.

48.     At all times relevant to this Complaint, Leslie Dorris has been an employer within meaning of the FLSA and the wage and hour laws in certain states as asserted in this lawsuit.

49.     At all times relevant to this action, Leslie Dorris acted as the employer of each of the Named Plaintiffs.

### Defendant Brenda Dorris

50.     Brenda Dorris, upon information and belief, is the Vice President of each of the Corporate Defendants, has an ownership interest in each of the Corporate Defendants, is employed or otherwise engaged in a managerial capacity with each of the Corporate Defendants, and is a resident of the State of Florida.

51.     At all times relevant to this Complaint, Brenda Dorris has been an employer within meaning of the FLSA and the wage and hour laws in certain states as asserted in this lawsuit.

52.     At all times relevant to this action, Brenda Dorris acted as the employer of each of the Named Plaintiffs.

## JURISDICTION AND VENUE

53.     The FLSA authorizes court actions by private parties to recover damages for violations of the FLSA's wage and hour provisions.  Subject matter jurisdiction over Plaintiffs' claims arises under 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

54.     The wage and hour laws in certain states as asserted in this lawsuit each provide for a private right of action to enforce their provisions.  This Court has jurisdiction over these state law claims pursuant to 28 U.S.C. § 1367 and 28 U.S.C. § 1332(d).

55.     Venue is proper in this District pursuant to 28 U.S.C § 1391(b) and (c).  The unlawful employment practices complained of *infra* took place within this District and a substantial part of the events and omissions giving rise to Named Plaintiffs' claims occurred in this District.  Further, Defendants regularly transact substantial business within this District and are residents of this District.

## BACKGROUND

56.     Named Plaintiffs and all other similarly situated Truck Drivers who worked for Defendants were not paid the mandated federal and state minimum hourly wage during the limitations period.

57.     Plaintiffs were each hired by Defendants and contracted to work for Defendants in exchange for an hourly rate of pay.

16

58.     The FLSA and corresponding wage and hour laws in certain states as asserted in this lawsuit, along with related federal and state regulations, require an employer to compensate its employees at least minimum wage for all hours worked during any pay period.

59.     Defendants forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated federal and state minimum wage.

60.     Specifically, Defendants informed their Truck Driver employees that since certain contracts were being terminated by the USPS, their jobs were being eliminated.

61.     Moreover, Defendants informed their Truck Drivers that in order to find work with a successor company to any of the USPS contracts, they must be actively employed with Defendants.

62.     However, once the USPS contracts were terminated and the Truck Drivers employment ended with Defendants, Defendants informed Named Plaintiffs and their other former Truck Drivers via e-mail, on or about June 14, 2021, that due to the contracts being terminated, they would not have money to pay them at all for any of the hours they worked during their final pay period with Defendants.

63.     As a result, Defendants exerted their influence and coercion to keep Named Plaintiffs and their other former Truck Drivers in their employ with the intention of requiring them to work without compensation at their hourly rate of pay for these hours worked.

64.     Defendants knew and were aware of their violations of the applicable laws regarding their obligation to pay the mandated federal and state minimum wage.   As such, Defendants' violations of the applicable laws are willful and malicious.

## JOINT-EMPLOYMENT ALLEGATIONS

65.     At all relevant times, PFS and its corporate family operated closely and associated with one another to own, operate and manage each of the Corporate Defendants.

66.     At all relevant times, PFS and its corporate family has been organized and operated in a consolidated way so that it can effectively provide consistent surface transportation and related services throughout the United States, including Florida, Pennsylvania, and the other states referenced herein.

67.     PFS and its corporate family, although created as separate legal entities, are indistinguishable from one another as a consolidated surface transportation enterprise jointly responsible for the day-to-day operations of thousands of motor carriers and their cargo.

68.     This consolidated operation includes, but is not limited to, common policies and systems with regard to its employment practices such as job descriptions and classifications, hiring, promotions and termination, setting salaries, rates of pay, and other compensation decisions, timekeeping and payroll data collection, and issuing payroll checks.

69.     This consolidated operation is located in St Augustine, Florida, where each entity of the corporate family shares a single location for each of its corporate headquarters.

70.     Similarly, the corporate executives of PFS and its corporate family are intertwined and overlap to further ensure the consistency required and necessary to operate its surface transportation enterprise.

71.     At all times relevant to this complaint, PFS and its corporate family jointly employed Named Plaintiffs and the similarly situated employees evidenced by their shared involvement in the terms of their employment and compensation.

72.     At all relevant times, PFS and its corporate family operated as a single entity for purposes of the wage and hour allegations set forth herein, having the effect that the unlawful conduct of each entity in PFS's corporate family is imputed to the other, therefore satisfying the applicable standards of joint employers within the meaning of the FLSA and corresponding wage and hour laws in the several states as asserted in this lawsuit.

73.     At all relevant times, PFS and its corporate family consolidated their decision-making with regard to the wage and hour allegations set forth herein, and collectively controlled and implemented policies that resulted in a failure to pay wages in violation of the FLSA and corresponding wage and hour laws in the several states as asserted in this lawsuit.

74.     Accordingly, PFS and its corporate family engaged in joint employment practices with regard to Named Plaintiffs and similarly situated employees.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

75.     Defendants have engaged in systemic wage and hour violations against their Truck Driver employees.  Defendants have caused, contributed to, and perpetuated unpaid wages through common policies, practices, and procedures, including but not limited to common compensation and centralized decision-making.

76.     Named Plaintiffs re-allege and incorporate by reference each and every allegation in the previous paragraphs alleging common policies, practices, and procedures resulting in unpaid wages earned by Truck Drivers employed to drive Defendants' motor carriers and cargo.

77.     Named Plaintiffs bring Count I for violations of the FLSA as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of all members of the

FLSA Collective Action Class ("FLSA Collective Action Class). The FLSA Collective Action Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver from three (3) years prior to the filing date of this Complaint up until this FLSA Collective Action Class is finally certified by the Court who have worked without being paid compensation of, at least, the federal minimum wage during any pay period.

78. Named Plaintiffs seek to represent all Truck Drivers, as described above, on a collective basis challenging, among other FLSA violations, Defendants' practice of failing to accurately record, and pay the federal minimum wage for all hours worked. Defendants willfully violated the FLSA through their failure to properly pay the Named Plaintiffs and FLSA Collective Action Class the federal minimum wage for all of the hours they have worked. Specifically, Defendants forced the Named Plaintiffs and FLSA Collective Action Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that the Named Plaintiffs and FLSA Collective Action Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated federal minimum wage for these hours worked.

79. The number and identity of other plaintiffs yet to opt-in and consent to be party plaintiffs may be determined from Defendants' records, and potential opt-in plaintiffs may easily and quickly be notified of the pendency of this action.

80.     Questions of law and fact common to the Named Plaintiffs and FLSA Collective Action Class include but are not limited to the following:

a.   Whether Defendants unlawfully failed to pay Truck Drivers compensation of, at least, the legally mandated federal minimum wage for all hours worked;

b.   Whether Defendants' policy, practice, or procedure of failing to compensate Truck Drivers of, at least, the legally mandated federal minimum wage for all hours worked violates the applicable provisions of the FLSA; and

c.   Whether Defendants' failure to compensate Truck Drivers of, at least, the legally mandated federal minimum wage for all hours worked was willful within the meaning of the FLSA.

81.     Named Plaintiffs' FLSA claims may be maintained as an "opt-in" collective action pursuant to 29 U.S.C. 216(b) because Named Plaintiffs are similarly situated to the other Truck Driver employees described in the FLSA Collective Action Class.  Named Plaintiffs' claims are similar to the claims asserted by the FLSA Collective Action Class.

82.     Named Plaintiffs and the FLSA Collective Action Class are (a) similarly situated; and (b) are subject to Defendants' common compensation policies, practices and procedures and centralized decision-making resulting in

unpaid wages, of at least, the mandated federal minimum wage for all work performed.

## **RULE 23 CLASS ACTION ALLEGATIONS**

### *PENNSYLVANIA (Violations of the PMWA and PWPCL)*

83.     Named Plaintiff, JAMES MASSIE, brings Count II for violations of the PMWA and Count III for violations of the PWPCL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Pennsylvania Class (the "Pennsylvania Class").  The Pennsylvania Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the Commonwealth of Pennsylvania from three (3) years prior to the filing date of this Amended Complaint up until this Pennsylvania Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

84.     Mr. Massie seeks to represent all Truck Drivers who worked in the Commonwealth of Pennsylvania, as described above, on a class basis challenging, among other PMWA and PWPCL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked. Defendants willfully violated the PMWA and PWPCL through their failure to properly pay Mr. Massie and the Pennsylvania Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Massie and the Pennsylvania Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr.

Massie and the Pennsylvania Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

85.     The Pennsylvania Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

86.     Furthermore, members of the Pennsylvania Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

87.     There are questions of law and fact which are not only common to the Pennsylvania Class, but which predominate over any questions affecting only individual members of the Pennsylvania Class.   The predominating common questions include, but are not limited to:

      a. Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

      b. Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the PMWA;

    c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

    d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the PMWA and PWPCL; and

    e.  Did Defendants' failure to pay employees all wages owed upon termination violate the PWPCL.

88.    The prosecution of separate actions by individual members of the Pennsylvania Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

89.    The claims and related damages of Mr. Massie are typical of the claims of each member of the Pennsylvania Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

90.    Mr. Massie will fairly and adequately protect the interests of the Pennsylvania Class.  Mr. Massie has retained counsel experienced and competent in class actions and complex employment litigation.

91.    Mr. Massie has no conflict of interest with the Pennsylvania Class.

92.    Mr. Massie is able to represent and protect the interest of the Pennsylvania Class members fairly and adequately.

93.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Pennsylvania Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Pennsylvania Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

94.     There are no unusual difficulties in the management of this case as a class action.

95.     The books and records of Defendants are material to the Pennsylvania Class as they disclose the rate of pay, hours worked, and wages paid to members of the Pennsylvania Class.

**NEW JERSEY (Violations of the NJWHL and NJWPL)**

96.     ALEXANDRIA CHEVALIER, brings Count IV for violations of the NJWHL and Count V for violations of the NJWPL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the New Jersey Class (the "New Jersey Class").  The New Jersey Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of New Jersey from six (6) years prior to the filing date of this Amended Complaint up until this New Jersey Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

26

97.     Ms. Chevalier seeks to represent all Truck Drivers who worked in the State of New Jersey, as described above, on a class basis challenging, among other NJWHL and NJWPL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the NJWHL and NJWPL through their failure to properly pay Ms. Chevalier and the New Jersey Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Ms. Chevalier and the New Jersey Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Ms. Chevalier and the New Jersey Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

98.     The New Jersey Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

99.     Furthermore, members of the New Jersey Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

100.   There are questions of law and fact which are not only common to the New Jersey Class, but which predominate over any questions affecting only individual members of the New Jersey Class.   The predominating common questions include, but are not limited to:

   a.   Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

   b.   Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the NJWHL;

   c.   Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

   d.   Did Defendants' failure to timely and fully pay employees all wages owed violate the NJWHL and NJWPL; and

   e.   Did Defendants' failure to pay employees all wages owed upon termination violate the NJWPL.

101.   The prosecution of separate actions by individual members of the New Jersey Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

102.     The claims and related damages of Ms. Chevalier are typical of the claims of each member of the New Jersey Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

103.     Ms. Chevalier will fairly and adequately protect the interests of the New Jersey Class.  Ms. Chevalier has retained counsel experienced and competent in class actions and complex employment litigation.

104.     Ms. Chevalier has no conflict of interest with the New Jersey Class.

105.     Ms. Chevalier is able to represent and protect the interest of the New Jersey Class members fairly and adequately.

106.     The common questions of law and fact enumerated above predominate over questions affecting only individual members of the New Jersey Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the New Jersey Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

107.     There are no unusual difficulties in the management of this case as a class action.

108.    The books and records of Defendants are material to the New Jersey Class as they disclose the rate of pay, hours worked, and wages paid to members of the New Jersey Class.

**KENTUCKY (Violations of the KWHA)**

109.    Named Plaintiff, KEITH SKEEN, brings Counts VI and VII for violations of the KWHA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Kentucky Class (the "Kentucky Class").  The Kentucky Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the Commonwealth of Kentucky from six (6) months prior to the filing date of this Amended Complaint up until this Kentucky Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

110.    Mr. Skeen seeks to represent all Truck Drivers who worked in the Commonwealth of Kentucky, as described above, on a class basis challenging, among other KWHA violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the KWHA through their failure to properly pay Mr. Skeen and the Kentucky Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Skeen and the Kentucky Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Skeen and the Kentucky Class were being required

to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

111.    The Kentucky Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

112.    Furthermore, members of the Kentucky Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

113.    There are questions of law and fact which are not only common to the Kentucky Class, but which predominate over any questions affecting only individual members of the Kentucky Class.  The predominating common questions include, but are not limited to:

    a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

    b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the KWHA;

    c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

    d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the KWHA; and

    e.  Did Defendants' failure to pay employees all wages owed upon termination violate the KWHA.

114.    The prosecution of separate actions by individual members of the Kentucky Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

115.    The claims and related damages of Mr. Skeen are typical of the claims of each member of the Kentucky Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

116.    Mr. Skeen will fairly and adequately protect the interests of the Kentucky Class.  Mr. Skeen has retained counsel experienced and competent in class actions and complex employment litigation.

117.    Mr. Skeen has no conflict of interest with the Kentucky Class.

118.    Mr. Skeen is able to represent and protect the interest of the Kentucky Class members fairly and adequately.

119.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Kentucky Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Kentucky Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

120.   There are no unusual difficulties in the management of this case as a class action.

121.   The books and records of Defendants are material to the Kentucky Class as they disclose the rate of pay, hours worked, and wages paid to members of the Kentucky Class.

**MISSISSIPPI (Breach of Contract)**

122.   Named Plaintiff, ANTONIO DUCKSWORTH, SR., brings Count VIII for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Mississippi Class (the "Mississippi Class").  The Mississippi Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Mississippi from one (1) year prior to the filing date of this Amended Complaint up until this Mississippi Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

123.    Mr. Ducksworth seeks to represent all Truck Drivers who worked in Mississippi, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.  Defendants willfully breached the individual employment agreements with each member of the Mississippi Class through their failure to properly pay Mr. Ducksworth and the putative members of the Mississippi Class their agreed-upon wage for all the work they performed.  Specifically, Defendants forced Mr. Ducksworth and the members of the putative Mississippi Class to work their paid shift(s) without compensation.  Defendants knew and have been aware at all times that Mr. Ducksworth and the members of the putative Mississippi Class were being required to work their paid shift(s), and yet failed to pay compensate them at their agreed-upon wage for all work performed during the relevant time period.

124.    The Mississippi Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

125.    Furthermore, members of the Mississippi Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

126.    There are questions of law and fact which are not only common to the Mississippi Class, but which predominate over any questions affecting only individual members of the Mississippi Class.   The predominating common questions include, but are not limited to:

      a.  Did a contract exist between Defendants and putative members of the Mississippi Class;

      b.  Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Mississippi Class pursuant to Mississippi's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

      c.  Did Defendants pay the putative members of the Mississippi Class all wages owed for all work performed during the relevant time period; and

      d.  Did Defendants' failure to pay the putative members of the Mississippi Class all wages owed constitute a breach of contract pursuant to Mississippi's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

127.    The prosecution of separate actions by individual members of the Mississippi Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

128.   The claims and related damages of Mr. Ducksworth are typical of the claims of each member of the Mississippi Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

129.   Mr. Ducksworth will fairly and adequately protect the interests of the Mississippi Class.   Mr. Ducksworth has retained counsel experienced and competent in class actions and complex employment litigation.

130.   Mr. Ducksworth has no conflict of interest with the Mississippi Class.

131.   Mr. Ducksworth is able to represent and protect the interest of the Mississippi Class members fairly and adequately.

132.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Mississippi Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Mississippi Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

133.   There are no unusual difficulties in the management of this case as a class action.

134.    The books and records of Defendants are material to the Mississippi Class as they disclose the rate of pay, hours worked, and wages paid to members of the Mississippi Class.

**TENNESSEE (Breach of Contract)**

135.    Named Plaintiff, BILLY CABLE, brings Count IX for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Tennessee Class (the "Tennessee Class").  The Tennessee Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Tennessee from six (6) years prior to the filing date of this Amended Complaint up until this Tennessee Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

136.    Mr. Cable seeks to represent all Truck Drivers who worked in Tennessee, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.  Defendants willfully breached the individual employment agreements with each member of the Tennessee Class through their failure to properly pay Mr. Cable and the putative members of the Tennessee Class their agreed-upon wage for all the work they performed.  Specifically, Defendants forced Mr. Cable and the members of the putative Tennessee Class to work their paid shift(s) without compensation.  Defendants knew and have been aware at all times

that Mr. Cable and the members of the putative Tennessee Class were being required to work their paid shift(s), and yet failed to pay compensate them at their agreed-upon wage for all work performed during the relevant time period.

137.   The Tennessee Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

138.   Furthermore, members of the Tennessee Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

139.   There are questions of law and fact which are not only common to the Tennessee Class, but which predominate over any questions affecting only individual members of the Tennessee Class.  The predominating common questions include, but are not limited to:

    a.  Did a contract exist between Defendants and putative members of the Tennessee Class;

    b.  Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Tennessee Class pursuant to Tennessee's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

c. Did Defendants pay the putative members of the Tennessee Class all wages owed for all work performed during the relevant time period; and

d. Did Defendants' failure to pay the putative members of the Tennessee Class all wages owed constitute a breach of contract pursuant to Tennessee's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

140.    The prosecution of separate actions by individual members of the Tennessee Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

141.    The claims and related damages of Mr. Cable are typical of the claims of each member of the Tennessee Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

142.    Mr. Cable will fairly and adequately protect the interests of the Tennessee Class.  Mr. Cable has retained counsel experienced and competent in class actions and complex employment litigation.

143.    Mr. Cable has no conflict of interest with the Tennessee Class.

144.    Mr. Cable is able to represent and protect the interest of the Tennessee Class members fairly and adequately.

145.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Tennessee Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Tennessee Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

146.    There are no unusual difficulties in the management of this case as a class action.

147.    The books and records of Defendants are material to the Tennessee Class as they disclose the rate of pay, hours worked, and wages paid to members of the Tennessee Class.

### NEBRASKA (Violations of the NWHA and NWPCA)

148.    Named Plaintiff, DUJUANA REYNOLDS, brings Count X for violations of the NWHA and Count XI for violations of the NWPCA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Nebraska Class (the "Nebraska Class").  The Nebraska Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Nebraska from three (3) years prior to the filing date of this Amended Complaint up until this Nebraska Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

149.    Ms. Reynolds seeks to represent all Truck Drivers who worked in the State of Nebraska, as described above, on a class basis challenging, among other NWHA and NWPCA violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the NWHA and NWPCA through their failure to properly pay Ms. Reynolds and the Nebraska Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Ms. Reynolds and the Nebraska Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Ms. Reynolds and the Nebraska Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

150.    The Nebraska Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

151.    Furthermore, members of the Nebraska Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

152.    There are questions of law and fact which are not only common to the Nebraska Class, but which predominate over any questions affecting only individual members of the Nebraska Class.  The predominating common questions include, but are not limited to:

a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the NWHA;

c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the NWHA and NWPCA; and

e.  Did Defendants' failure to pay employees all wages owed upon termination violate the NWPCA.

153.    The prosecution of separate actions by individual members of the Nebraska Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

154.    The claims and related damages of Ms. Reynolds are typical of the claims of each member of the Nebraska Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

155.    Ms. Reynolds will fairly and adequately protect the interests of the Nebraska Class.  Ms. Reynolds has retained counsel experienced and competent in class actions and complex employment litigation.

156.    Ms. Reynolds has no conflict of interest with the Nebraska Class.

157.    Ms. Reynolds is able to represent and protect the interest of the Nebraska Class members fairly and adequately.

158.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Nebraska Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Nebraska Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

159.    There are no unusual difficulties in the management of this case as a class action.

160.    The books and records of Defendants are material to the Nebraska Class as they disclose the rate of pay, hours worked, and wages paid to members of the Nebraska Class.

**LOUISIANA (Breach of Contract)**

161.    Named Plaintiff, DANTZLER CATO, brings Count XII for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Louisiana Class (the "Louisiana Class").  The Louisiana Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Louisiana from one (1) year prior to the filing date of this Amended Complaint up until this Louisiana Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

162.    Ms. Cato seeks to represent all Truck Drivers who worked in Louisiana, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.  Defendants willfully breached the individual employment agreements with each member of the Louisiana Class through their failure to properly pay Ms. Cato and the putative members of the Louisiana Class their agreed-upon wage for all the work they performed.  Specifically, Defendants forced Ms. Cato and the members of the putative Louisiana Class to work their paid shift(s) without compensation.  Defendants knew and have been aware at all times

that Ms. Cato and the members of the putative Louisiana Class were being required to work their paid shift(s), and yet failed to pay compensate them at their agreed-upon wage for all work performed during the relevant time period.

163.    The Louisiana Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

164.    Furthermore, members of the Louisiana Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

165.    There are questions of law and fact which are not only common to the Louisiana Class, but which predominate over any questions affecting only individual members of the Louisiana Class.  The predominating common questions include, but are not limited to:

    a.  Did a contract exist between Defendants and putative members of the Louisiana Class;

    b.  Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Louisiana Class pursuant to Louisiana's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

c.  Did Defendants pay the putative members of the Louisiana Class all wages owed for all work performed during the relevant time period; and

d.  Did Defendants' failure to pay the putative members of the Louisiana Class all wages owed constitute a breach of contract pursuant to Louisiana's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

166.  The prosecution of separate actions by individual members of the Louisiana Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

167.  The claims and related damages of Ms. Cato are typical of the claims of each member of the Louisiana Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

168.  Ms. Cato will fairly and adequately protect the interests of the Louisiana Class.  Ms. Cato has retained counsel experienced and competent in class actions and complex employment litigation.

169.  Ms. Cato has no conflict of interest with the Louisiana Class.

170.  Ms. Cato is able to represent and protect the interest of the Louisiana Class members fairly and adequately.

171.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Louisiana Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Louisiana Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

172.   There are no unusual difficulties in the management of this case as a class action.

173.   The books and records of Defendants are material to the Louisiana Class as they disclose the rate of pay, hours worked, and wages paid to members of the Louisiana Class.

**MICHIGAN (Violations of the MWOWA and Breach of Contract)**

174.   Named Plaintiff, JAMAL ALLEN, brings Counts XIII and Count XIV for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Michigan Class (the "Michigan Class").  The Michigan Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Michigan from three (3) years prior to the filing date of this Amended Complaint up until this Michigan Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

175.    Mr. Allen seeks to represent all Truck Drivers who worked in the State of Michigan, as described above, on a class basis challenging, among other MWOWA violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the MWOWA through their failure to properly pay Mr. Allen and the Michigan Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Allen and the Michigan Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Allen and the Michigan Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

176.    Mr. Allen also seeks to represent all Truck Drivers who worked in the State of Michigan, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.

177.    The Michigan Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

178.    Furthermore, members of the Michigan Class seeking similar employment within the surface transportation industry, specifically with companies

48

providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

179.    There are questions of law and fact which are not only common to the Michigan Class, but which predominate over any questions affecting only individual members of the Michigan Class.  The predominating common questions include, but are not limited to:

a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the MWOWA;

c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked; and

d.  Did Defendants' failure to fully pay employees all wages owed violate the MWOWA;

e.  Did a contract exist between Defendants and putative members of the Michigan Class;

f. Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Michigan Class pursuant to Michigan's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

g. Did Defendants pay the putative members of the Michigan Class all wages owed for all work performed during the relevant time period; and

h. Did Defendants' failure to pay the putative members of the Michigan Class all wages owed constitute a breach of contract pursuant to Michigan's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

180. The prosecution of separate actions by individual members of the Michigan Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

181. The claims and related damages of Mr. Allen are typical of the claims of each member of the Michigan Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

182.    Mr. Allen will fairly and adequately protect the interests of the Michigan Class.  Mr. Allen has retained counsel experienced and competent in class actions and complex employment litigation.

183.    Mr. Allen has no conflict of interest with the Michigan Class.

184.    Mr. Allen is able to represent and protect the interest of the Michigan Class members fairly and adequately.

185.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Michigan Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Michigan Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

186.    There are no unusual difficulties in the management of this case as a class action.

187.    The books and records of Defendants are material to the Michigan Class as they disclose the rate of pay, hours worked, and wages paid to members of the Michigan Class.

**TEXAS (Breach of Contract)**

188.    Named Plaintiff, JOHNSON BRACKINS, brings Count XV for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all

51

members of the Texas Class (the "Texas Class").  The Texas Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Texas from four (4) years prior to the filing date of this Amended Complaint up until this Texas Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

189.    Mr. Brackins seeks to represent all Truck Drivers who worked in Texas, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.  Defendants willfully breached the individual employment agreements with each member of the Texas Class through their failure to properly pay Mr. Brackins and the putative members of the Texas Class their agreed-upon wage for all the work they performed.  Specifically, Defendants forced Mr. Brackins and the members of the putative Texas Class to work their paid shift(s) without compensation.  Defendants knew and have been aware at all times that Mr. Brackins and the members of the putative Texas Class were being required to work their paid shift(s), and yet failed to pay compensate them at their agreed-upon wage for all work performed during the relevant time period.

190.    The Texas Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

191.   Furthermore, members of the Texas Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

192.   There are questions of law and fact which are not only common to the Texas Class, but which predominate over any questions affecting only individual members of the Texas Class.  The predominating common questions include, but are not limited to:

a. Did a contract exist between Defendants and putative members of the Texas Class;

b. Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Texas Class pursuant to Texas' law of contracts, quantum meruit, quasi-contract or unjust enrichment;

c. Did Defendants pay the putative members of the Texas Class all wages owed for all work performed during the relevant time period; and

d. Did Defendants' failure to pay the putative members of the Texas Class all wages owed constitute a breach of contract pursuant to

Texas' law of contracts, quantum meruit, quasi-contract or unjust enrichment.

193.   The prosecution of separate actions by individual members of the Texas Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

194.   The claims and related damages of Mr. Brackins are typical of the claims of each member of the Texas Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

195.   Mr. Brackins will fairly and adequately protect the interests of the Texas Class.  Mr. Brackins has retained counsel experienced and competent in class actions and complex employment litigation.

196.   Mr. Brackins has no conflict of interest with the Texas Class.

197.   Mr. Brackins is able to represent and protect the interest of the Texas Class members fairly and adequately.

198.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Texas Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that

individual members of the Texas Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

199.    There are no unusual difficulties in the management of this case as a class action.

200.    The books and records of Defendants are material to the Texas Class as they disclose the rate of pay, hours worked, and wages paid to members of the Texas Class.

### MINNESOTA (Violations of the MFLSA and MWPRL)

201.    Named Plaintiff, JONATHAN KUBICHEK, brings Count XVI for violations of the MFLSA and Count XVII for violations of the MWPRL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Minnesota Class (the "Minnesota Class").  The Minnesota Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Minnesota from three (3) years prior to the filing date of this Amended Complaint up until this Minnesota Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

202.    Mr. Kubichek seeks to represent all Truck Drivers who worked in the State of Minnesota, as described above, on a class basis challenging, among other MFLSA and MWPRL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the MFLSA and MWPRL through their failure to properly pay Mr.

Kubichek and the Minnesota Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Kubichek and the Minnesota Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Mr. Kubichek and the Minnesota Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

203.    The Minnesota Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

204.    Furthermore, members of the Minnesota Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

205.    There are questions of law and fact which are not only common to the Minnesota Class, but which predominate over any questions affecting only individual members of the Minnesota Class.  The predominating common questions include, but are not limited to:

a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the MFLSA;

c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the MFLSA and MWPRL; and

e.  Did Defendants' failure to pay employees all wages owed upon termination violate the MWPRL.

206.   The prosecution of separate actions by individual members of the Minnesota Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

207.   The claims and related damages of Mr. Kubichek are typical of the claims of each member of the Minnesota Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

208.   Mr. Kubichek will fairly and adequately protect the interests of the Minnesota Class.  Mr. Kubichek has retained counsel experienced and competent in class actions and complex employment litigation.

209.   Mr. Kubichek has no conflict of interest with the Minnesota Class.

210.   Mr. Kubichek is able to represent and protect the interest of the Minnesota Class members fairly and adequately.

211.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Minnesota Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Minnesota Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

212.   There are no unusual difficulties in the management of this case as a class action.

213.   The books and records of Defendants are material to the Minnesota Class as they disclose the rate of pay, hours worked, and wages paid to members of the Minnesota Class.

***MISSOURI (Violations of the MMWL and Breach of Contract)***

214.   Named Plaintiff, FERNANDO WARREN, brings Count XVIII for violations of the MMWL and Count XIX for breach of contract as a class action

pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Missouri Class (the "Missouri Class").  The Missouri Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Missouri from three (3) years prior to the filing date of this Amended Complaint up until this Missouri Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

215.   Mr. Warren seeks to represent all Truck Drivers who worked in the State of Missouri, as described above, on a class basis challenging, among other MMWL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.   Defendants willfully violated the MMWL through their failure to properly pay Mr. Warren and the Missouri Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Warren and the Missouri Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Warren and the Missouri Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

216.   Mr. Warren also seeks to represent all Truck Drivers who worked in the State of Missouri, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.

217.   The Missouri Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

218.   Furthermore, members of the Missouri Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

219.   There are questions of law and fact which are not only common to the Missouri Class, but which predominate over any questions affecting only individual members of the Missouri Class.  The predominating common questions include, but are not limited to:

    a.   Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

    b.   Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the MMWL;

    c.   Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

    d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the MMWL;

    e.  Did a contract exist between Defendants and putative members of the Missouri Class;

    f.  Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Missouri Class pursuant to Missouri's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

    g.  Did Defendants pay the putative members of the Missouri Class all wages owed for all work performed during the relevant time period; and

    h.  Did Defendants' failure to pay the putative members of the Missouri Class all wages owed constitute a breach of contract pursuant to Missouri's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

220.   The prosecution of separate actions by individual members of the Missouri Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

221.   The claims and related damages of Mr. Warren are typical of the claims of each member of the Missouri Class, within the meaning of Fed. R. Civ. P.

23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

222.    Mr. Warren will fairly and adequately protect the interests of the Missouri Class. Mr. Warren has retained counsel experienced and competent in class actions and complex employment litigation.

223.    Mr. Warren has no conflict of interest with the Missouri Class.

224.    Mr. Warren is able to represent and protect the interest of the Missouri Class members fairly and adequately.

225.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Missouri Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the Missouri Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

226.    There are no unusual difficulties in the management of this case as a class action.

227.    The books and records of Defendants are material to the Missouri Class as they disclose the rate of pay, hours worked, and wages paid to members of the Missouri Class.

*GEORGIA (Violations of the GMWL and Breach of Contract)*

228.    Named Plaintiff, WESLEY WORTHY, SR., brings Counts XX for violations of the GMWL and Count XXI for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Georgia Class (the "Georgia Class").  The Georgia Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Georgia from three (3) years prior to the filing date of this Amended Complaint up until this Georgia Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

229.    Mr. Worthy seeks to represent all Truck Drivers who worked in the State of Georgia, as described above, on a class basis challenging, among other GMWL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the GMWL through their failure to properly pay Mr. Worthy and the Georgia Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Worthy and the Georgia Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Worthy and the Georgia Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

230.     Mr. Worthy also seeks to represent all Truck Drivers who worked in the State of Georgia, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.

231.     The Georgia Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

232.     Furthermore, members of the Georgia Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

233.     There are questions of law and fact which are not only common to the Georgia Class, but which predominate over any questions affecting only individual members of the Georgia Class.  The predominating common questions include, but are not limited to:

      a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b. Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the GMWL;

c. Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

d. Did Defendants' failure to timely and fully pay employees all wages owed violate the GMWL;

e. Did a contract exist between Defendants and putative members of the Georgia Class;

f. Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Georgia Class pursuant to Georgia's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

g. Did Defendants pay the putative members of the Georgia Class all wages owed for all work performed during the relevant time period; and

h. Did Defendants' failure to pay the putative members of the Georgia Class all wages owed constitute a breach of contract pursuant to

Georgia's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

234.   The prosecution of separate actions by individual members of the Georgia Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

235.   The claims and related damages of Mr. Worthy are typical of the claims of each member of the Georgia Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

236.   Mr. Worthy will fairly and adequately protect the interests of the Georgia Class.   Mr. Worthy has retained counsel experienced and competent in class actions and complex employment litigation.

237.   Mr. Worthy has no conflict of interest with the Georgia Class.

238.   Mr. Worthy is able to represent and protect the interest of the Georgia Class members fairly and adequately.

239.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Georgia Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that

individual members of the Georgia Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

240.    There are no unusual difficulties in the management of this case as a class action.

241.    The books and records of Defendants are material to the Georgia Class as they disclose the rate of pay, hours worked, and wages paid to members of the Georgia Class.

## ALABAMA (Breach of Contract)

242.    Named Plaintiff, RUFUS AUSTIN, brings Count XXII for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Alabama Class (the "Alabama Class").   The Alabama Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Alabama from six (6) years prior to the filing date of this Amended Complaint up until this Alabama Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

243.    Mr. Austin seeks to represent all Truck Drivers who worked in Alabama, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.   Defendants willfully breached the individual employment agreements with each member of the Alabama Class through their failure to properly pay Mr. Austin

and the putative members of the Alabama Class their agreed-upon wage for all the work they performed.  Specifically, Defendants forced Mr. Austin and the members of the putative Alabama Class to work their paid shift(s) without compensation. Defendants knew and have been aware at all times that Mr. Austin and the members of the putative Alabama Class were being required to work their paid shift(s), and yet failed to pay compensate them at their agreed-upon wage for all work performed during the relevant time period.

244.   The Alabama Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

245.   Furthermore, members of the Alabama Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

246.   There are questions of law and fact which are not only common to the Alabama Class, but which predominate over any questions affecting only individual members of the Alabama Class.  The predominating common questions include, but are not limited to:

      a.   Did a contract exist between Defendants and putative members of the Alabama Class;

b. Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Alabama Class pursuant to Alabama's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

c. Did Defendants pay the putative members of the Alabama Class all wages owed for all work performed during the relevant time period; and

d. Did Defendants' failure to pay the putative members of the Alabama Class all wages owed constitute a breach of contract pursuant to Alabama's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

247.    The prosecution of separate actions by individual members of the Alabama Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

248.    The claims and related damages of Mr. Austin are typical of the claims of each member of the Alabama Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

249.   Mr. Austin will fairly and adequately protect the interests of the Alabama Class.  Mr. Austin has retained counsel experienced and competent in class actions and complex employment litigation.

250.   Mr. Austin has no conflict of interest with the Alabama Class.

251.   Mr. Austin is able to represent and protect the interest of the Alabama Class members fairly and adequately.

252.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Alabama Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Alabama Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

253.   There are no unusual difficulties in the management of this case as a class action.

254.   The books and records of Defendants are material to the Alabama Class as they disclose the rate of pay, hours worked, and wages paid to members of the Alabama Class.

**SOUTH CAROLINA (Violations of the SCPWA)**

255.   Named Plaintiff, DAVID STIEGELMEYER, II, brings Count XXIII for violations of the SCPWA as a class action pursuant to Fed. R. Civ. P. 23 on

70

behalf of all members of the South Carolina Class (the "South Carolina Class"). The South Carolina Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of South Carolina from three (3) years prior to the filing date of this Amended Complaint up until this South Carolina Class is finally certified by the Court, who have worked without being paid pay all wages owed for all work performed.

256.    Mr. Stiegelmeyer seeks to represent all Truck Drivers who worked in the State of South Carolina, as described above, on a class basis challenging, among other SCPWA violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the SCPWA through their failure to properly pay Mr. Stiegelmeyer and the South Carolina Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Stiegelmeyer and the South Carolina Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Stiegelmeyer and the South Carolina Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

257.    The South Carolina Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

258.     Furthermore, members of the South Carolina Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

259.     There are questions of law and fact which are not only common to the South Carolina Class, but which predominate over any questions affecting only individual members of the South Carolina Class.   The predominating common questions include, but are not limited to:

  a.  Did Defendants' failure to timely and fully pay employees all wages owed violate the SCPWA;

  b.  Did Defendants act willfully, intentionally, and maliciously in failing to timely and fully pay employees all wages owed;

  c.  Did Defendants' failure to pay employees all wages owed upon termination violate the SCPWA.

260.     The prosecution of separate actions by individual members of the South Carolina Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

261.     The claims and related damages of Mr. Stiegelmeyer are typical of the claims of each member of the South Carolina Class, within the meaning of Fed. R.

Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

262.    Mr. Stiegelmeyer will fairly and adequately protect the interests of the South Carolina Class.   Mr. Stiegelmeyer has retained counsel experienced and competent in class actions and complex employment litigation.

263.    Mr. Stiegelmeyer has no conflict of interest with the South Carolina Class.

264.    Mr. Stiegelmeyer is able to represent and protect the interest of the South Carolina Class members fairly and adequately.

265.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the South Carolina Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the South Carolina Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

266.    There are no unusual difficulties in the management of this case as a class action.

267.    The books and records of Defendants are material to the South Carolina Class as they disclose the rate of pay, hours worked, and wages paid to members of the South Carolina Class.

**VERMONT (Violations of the VMWL and Breach of Contract)**

268.    Named Plaintiff, DAVID BLANCHARD, brings Count XXIV for violations of the VMWL and Count XXV for breach of contract as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Vermont Class (the "Vermont Class").  The Vermont Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Vermont from six (6) years prior to the filing date of this Amended Complaint up until this Vermont Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

269.    Mr. Blanchard seeks to represent all Truck Drivers who worked in the State of Vermont, as described above, on a class basis challenging, among other VMWL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.   Defendants willfully violated the VMWL through their failure to properly pay Mr. Blanchard and the Vermont Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.   Specifically, Defendants forced Mr. Blanchard and the Vermont Class to work their paid shift(s) without pay.   Defendants knew and have been aware at all times that Mr. Blanchard and the Vermont Class were being required to

work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

270.    Mr. Blanchard also seeks to represent all Truck Drivers who worked in the State of Vermont, as described above, on a class basis for breach of contract for Defendants' failure to pay all wages owed for all work performed during the relevant time period.

271.    The Vermont Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

272.    Furthermore, members of the Vermont Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

273.    There are questions of law and fact which are not only common to the Vermont Class, but which predominate over any questions affecting only individual members of the Vermont Class.  The predominating common questions include, but are not limited to:

        a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b. Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the VMWL;

c. Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

d. Did Defendants' failure to timely and fully pay employees all wages owed violate the VMWL;

e. Did a contract exist between Defendants and putative members of the Vermont Class;

f. Did Defendants' failure to pay compensation for all work performed create an entitlement to wages for the putative members of the Vermont Class pursuant to Vermont's law of contracts, quantum meruit, quasi-contract or unjust enrichment;

g. Did Defendants pay the putative members of the Vermont Class all wages owed for all work performed during the relevant time period; and

h. Did Defendants' failure to pay the putative members of the Vermont Class all wages owed constitute a breach of contract pursuant to

Vermont's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

274.   The prosecution of separate actions by individual members of the Vermont Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

275.   The claims and related damages of Mr. Blanchard are typical of the claims of each member of the Vermont Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

276.   Mr. Blanchard will fairly and adequately protect the interests of the Vermont Class.  Mr. Blanchard has retained counsel experienced and competent in class actions and complex employment litigation.

277.   Mr. Blanchard has no conflict of interest with the Vermont Class.

278.   Mr. Blanchard is able to represent and protect the interest of the Vermont Class members fairly and adequately.

279.   The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Vermont Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that

individual members of the Vermont Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

280.    There are no unusual difficulties in the management of this case as a class action.

281.    The books and records of Defendants are material to the Vermont Class as they disclose the rate of pay, hours worked, and wages paid to members of the Vermont Class.

**VIRGINIA (Violations of the VMWA and VWPA)**

282.    Named Plaintiff, WILLIAM HARRIS, brings Count XXVI for violations of the VMWA and Count XXVII for violations of the VWPA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Virginia Class (the "Virginia Class").  The Virginia Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the Commonwealth of Virginia from three (3) years prior to the filing date of this Amended Complaint up until this Virginia Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

283.    Mr. Harris seeks to represent all Truck Drivers who worked in the Commonwealth of Virginia, as described above, on a class basis challenging, among other VMWA and VWPA violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked. Defendants willfully violated the VMWA and VWPA through their failure to

properly pay Mr. Harris and the Virginia Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked. Specifically, Defendants forced Mr. Harris and the Virginia Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Mr. Harris and the Virginia Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

284. The Virginia Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

285. Furthermore, members of the Virginia Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

286. There are questions of law and fact which are not only common to the Virginia Class, but which predominate over any questions affecting only individual members of the Virginia Class. The predominating common questions include, but are not limited to:

    a. Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

    b. Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the VMWA;

    c. Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

    d. Did Defendants' failure to timely and fully pay employees all wages owed violate the VMWA and VWPA; and

    e. Did Defendants' failure to pay employees all wages owed upon termination violate the VWPA.

287. The prosecution of separate actions by individual members of the Virginia Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

288. The claims and related damages of Mr. Harris are typical of the claims of each member of the Virginia Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

289.    Mr. Harris will fairly and adequately protect the interests of the Virginia Class.  Mr. Harris has retained counsel experienced and competent in class actions and complex employment litigation.

290.    Mr. Harris has no conflict of interest with the Virginia Class.

291.    Mr. Harris is able to represent and protect the interest of the Virginia Class members fairly and adequately.

292.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Virginia Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Virginia Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

293.    There are no unusual difficulties in the management of this case as a class action.

294.    The books and records of Defendants are material to the Virginia Class as they disclose the rate of pay, hours worked, and wages paid to members of the Virginia Class.

**OHIO (Violations of the OMWL and OPPA)**

295.    Named Plaintiff, MICHAEL JOYNER, brings Count XXVIII for violations of the OMWL and Count XXIX for violations of the OPPA as a class

action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Ohio Class

(the "Ohio Class").  The Ohio Class is defined as follows:

> All individuals who are or have been employed by Defendants as a
> Truck Driver in the State of Ohio from three (3) years prior to the
> filing date of this Amended Complaint up until this Ohio Class is
> finally certified by the Court, who have worked without being paid
> compensation of, at least, the state minimum wage during any pay
> period.

296.    Mr. Joyner seeks to represent all Truck Drivers who worked in the

State of Ohio, as described above, on a class basis challenging, among other

OMLW and OPPA violations, Defendants' practice of failing to accurately record,

and pay the state minimum wage for all hours worked.  Defendants willfully

violated the OMWL and OPPA through their failure to properly pay Mr. Joyner and

the Ohio Class the state minimum wage and their agreed-upon hourly rate for all the

hours they have worked.  Specifically, Defendants forced Mr. Joyner and the Ohio

Class to work their paid shift(s) without pay.  Defendants knew and have been

aware at all times that Mr. Joyner and the Ohio Class were being required to work

their paid shift(s), and yet failed to pay them compensation of, at least, the legally

mandated state minimum wage for these hours worked.

297.    The Ohio Class, upon information and belief, consists of a large

number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1),

and is thus so numerous that joinder of all members is impracticable.

298.    Furthermore, members of the Ohio Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

299.    There are questions of law and fact which are not only common to the Ohio Class, but which predominate over any questions affecting only individual members of the Ohio Class.  The predominating common questions include, but are not limited to:

a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the OMWL;

c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the OMWL and OPPA; and

e. Did Defendants' failure to pay employees all wages owed upon termination violate the OPPA.

300. The prosecution of separate actions by individual members of the Ohio Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

301. The claims and related damages of Mr. Joyner are typical of the claims of each member of the Ohio Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

302. Mr. Joyner will fairly and adequately protect the interests of the Ohio Class. Mr. Joyner has retained counsel experienced and competent in class actions and complex employment litigation.

303. Mr. Joyner has no conflict of interest with the Ohio Class.

304. Mr. Joyner is able to represent and protect the interest of the Ohio Class members fairly and adequately.

305. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Ohio Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). The likelihood that

individual members of the Ohio Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

306.    There are no unusual difficulties in the management of this case as a class action.

307.    The books and records of Defendants are material to the Ohio Class as they disclose the rate of pay, hours worked, and wages paid to members of the Ohio Class.

**NEW HAMPSHIRE (Violations of the NHMWL and NHWPL)**

308.    Named Plaintiff, KELLY COTE, brings Count XXX for violations of the NHMWL and Count XXXI for violations of the NHWPL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the New Hampshire Class (the "New Hampshire Class").  The New Hampshire Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of New Hampshire from three (3) years prior to the filing date of this Amended Complaint up until this New Hampshire Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

309.    Ms. Cote seeks to represent all Truck Drivers who worked in the State of New Hampshire, as described above, on a class basis challenging, among other NHMWL and NHWPL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully

violated the NHMWL and NHWPL through their failure to properly pay Ms. Cote and the New Hampshire Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Ms. Cote and the New Hampshire Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Ms. Cote and the New Hampshire Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

310.    The New Hampshire Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

311.    Furthermore, members of the New Hampshire Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

312.    There are questions of law and fact which are not only common to the New Hampshire Class, but which predominate over any questions affecting only individual members of the New Hampshire Class.  The predominating common questions include, but are not limited to:

    a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

    b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the NHMWL;

    c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

    d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the NHMWL and NHWPL; and

    e.  Did Defendants' failure to pay employees all wages owed upon termination violate the NHWPL.

313.    The prosecution of separate actions by individual members of the New Hampshire Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

314.    The claims and related damages of Ms. Cote are typical of the claims of each member of the New Hampshire Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

315.    Ms. Cote will fairly and adequately protect the interests of the New Hampshire Class.  Ms. Cote has retained counsel experienced and competent in class actions and complex employment litigation.

316.    Ms. Cote has no conflict of interest with the New Hampshire Class.

317.    Ms. Cote is able to represent and protect the interest of the New Hampshire Class members fairly and adequately.

318.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the New Hampshire Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3). The likelihood that individual members of the New Hampshire Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

319.    There are no unusual difficulties in the management of this case as a class action.

320.    The books and records of Defendants are material to the New Hampshire Class as they disclose the rate of pay, hours worked, and wages paid to members of the New Hampshire Class.

*MARYLAND (Violations of the MWHL and MWPCL)*

321.    Named Plaintiff, PHEVOTT MADDEN, brings Count XXXII for violations of the MWHL and Count XXXIII for violations of the NHWPL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Maryland Class (the "Maryland Class").  The Maryland Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Maryland from three (3) years prior to the filing date of this Amended Complaint up until this Maryland Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

322.    Mr. Madden seeks to represent all Truck Drivers who worked in the State of Maryland, as described above, on a class basis challenging, among other MWHL and MWPCL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the MWHL and MWPCL through their failure to properly pay Mr. Madden and the Maryland Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Madden and the Maryland Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Madden and the Maryland Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

323.    The Maryland Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

324.    Furthermore, members of the Maryland Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

325.    There are questions of law and fact which are not only common to the Maryland Class, but which predominate over any questions affecting only individual members of the Maryland Class.  The predominating common questions include, but are not limited to:

a.   Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

b.   Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the MWHL;

c.   Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

90

d. Did Defendants' failure to timely and fully pay employees all wages owed violate the MWHL and MWPCL; and

e. Did Defendants' failure to pay employees all wages owed upon termination violate the MWPCL.

326. The prosecution of separate actions by individual members of the Maryland Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

327. The claims and related damages of Mr. Madden are typical of the claims of each member of the Maryland Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

328. Mr. Madden will fairly and adequately protect the interests of the Maryland Class.  Mr. Madden has retained counsel experienced and competent in class actions and complex employment litigation.

329. Mr. Madden has no conflict of interest with the Maryland Class.

330. Mr. Madden is able to represent and protect the interest of the Maryland Class members fairly and adequately.

331. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Maryland Class, and a class action is the superior method for fair and efficient adjudication of

the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that

individual members of the Maryland Class will prosecute separate actions is remote

due to the time and expense necessary to conduct such litigation.

332.    There are no unusual difficulties in the management of this case as a

class action.

333.    The books and records of Defendants are material to the Maryland

Class as they disclose the rate of pay, hours worked, and wages paid to members of

the Maryland Class.

### KANSAS (Violations of the KWPA)

334.    Named Plaintiff, MICHAEL WEGENER, brings Count XXXIV for

violations of the KWPA as a class action pursuant to Fed. R. Civ. P. 23 on behalf of

all members of the Kansas Class (the "Kansas Class").  The Kansas Class is defined

as follows:

> All individuals who are or have been employed by Defendants as a
> Truck Driver in the State of Kansas from three (3) years prior to the
> filing date of this Amended Complaint up until this Kansas Class is
> finally certified by the Court, who have worked without being paid
> compensation of, at least, the state minimum wage during any pay
> period.

335.    Mr. Wegener seeks to represent all Truck Drivers who worked in the

State of Kansas, as described above, on a class basis challenging, among other

KWPA violations, Defendants' practice of failing to accurately record, and pay

wages for all hours worked.  Defendants willfully violated the KWPA through their

failure to properly pay Mr. Wegener and the Kansas Class their agreed-upon hourly rate for all the hours they have worked. Specifically, Defendants forced Mr. Wegener and the Kansas Class to work their paid shift(s) without pay. Defendants knew and have been aware at all times that Mr. Wegener and the Kansas Class were being required to work their paid shift(s), and yet failed to pay them compensation for these hours worked.

336.    The Kansas Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

337.    Furthermore, members of the Kansas Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

338.    There are questions of law and fact which are not only common to the Kansas Class, but which predominate over any questions affecting only individual members of the Kansas Class. The predominating common questions include, but are not limited to:

    a.  Did Defendants unlawfully fail to pay Truck Drivers wages for all hours worked;

    c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay wages for all hours worked;

    d.  Did Defendants' failure to timely and fully pay employees all wages owed violates the KWPA; and

    e.  Did Defendants' failure to pay employees all wages owed upon termination violate the KWPA.

339.   The prosecution of separate actions by individual members of the Kansas Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

340.   The claims and related damages of Mr. Wegener are typical of the claims of each member of the Kansas Class, within the meaning of Fed. R. Civ. P. 23(a)(3), and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

341.   Mr. Wegener will fairly and adequately protect the interests of the Kansas Class.  Mr. Wegener has retained counsel experienced and competent in class actions and complex employment litigation.

342.   Mr. Wegener has no conflict of interest with the Kansas Class.

343.   Mr. Wegener is able to represent and protect the interest of the Kansas Class members fairly and adequately.

344.    The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Kansas Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Kansas Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

345.    There are no unusual difficulties in the management of this case as a class action.

346.    The books and records of Defendants are material to the Kansas Class as they disclose the rate of pay, hours worked, and wages paid to members of the Kansas Class.

**IOWA (Violations of the IMWL and IWPCL)**

347.    Named Plaintiff, RYAN PIERCE, brings Count XXXV for violations of the IMWL and Count XXXVI for violations of the IWPCL as a class action pursuant to Fed. R. Civ. P. 23 on behalf of all members of the Iowa Class (the "Iowa Class").  The Iowa Class is defined as follows:

> All individuals who are or have been employed by Defendants as a Truck Driver in the State of Iowa from three (3) years prior to the filing date of this Amended Complaint up until this Iowa Class is finally certified by the Court, who have worked without being paid compensation of, at least, the state minimum wage during any pay period.

348.    Mr. Pierce seeks to represent all Truck Drivers who worked in the State of Iowa, as described above, on a class basis challenging, among other IMWL and IWPCL violations, Defendants' practice of failing to accurately record, and pay the state minimum wage for all hours worked.  Defendants willfully violated the IMWL and IWPCL through their failure to properly pay Mr. Pierce and the Iowa Class the state minimum wage and their agreed-upon hourly rate for all the hours they have worked.  Specifically, Defendants forced Mr. Pierce and the Iowa Class to work their paid shift(s) without pay.  Defendants knew and have been aware at all times that Mr. Pierce and the Iowa Class were being required to work their paid shift(s), and yet failed to pay them compensation of, at least, the legally mandated state minimum wage for these hours worked.

349.    The Iowa Class, upon information and belief, consists of a large number of individuals sufficient to satisfy numerosity as required by Rule 23(a)(1), and is thus so numerous that joinder of all members is impracticable.

350.    Furthermore, members of the Iowa Class seeking similar employment within the surface transportation industry, specifically with companies providing services to the USPS, may be reluctant to raise individual claims for fear of retaliation.

351.    There are questions of law and fact which are not only common to the Iowa Class, but which predominate over any questions affecting only individual

members of the Iowa Class.  The predominating common questions include, but are not limited to:

      a.  Did Defendants unlawfully fail to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked;

      b.  Did Defendants' failure to pay Truck Drivers compensation of, at least, the legally mandated state minimum wage for all hours worked violate the IMWL;

      c.  Did Defendants act willfully, intentionally, and maliciously in failing to pay compensation of, at least, the legally mandated state minimum wage for all hours worked;

      d.  Did Defendants' failure to timely and fully pay employees all wages owed violate the IMWL and IWPCL; and

      e.  Did Defendants' failure to pay employees all wages owed upon termination violate the IWPCL.

352.   The prosecution of separate actions by individual members of the Iowa Class would create a risk of establishing incompatible standards of conduct for Defendants, within the meaning of Fed. R. Civ. P. 23 (b)(1)(A).

353.   The claims and related damages of Mr. Pierce are typical of the claims of each member of the Iowa Class, within the meaning of Fed. R. Civ. P. 23(a)(3),

and are based on and arise out of identical facts constituting the wrongful conduct of Defendants.

354.　Mr. Pierce will fairly and adequately protect the interests of the Iowa Class.  Mr. Pierce has retained counsel experienced and competent in class actions and complex employment litigation.

355.　Mr. Pierce has no conflict of interest with the Iowa Class.

356.　Mr. Pierce is able to represent and protect the interest of the Iowa Class members fairly and adequately.

357.　The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Iowa Class, and a class action is the superior method for fair and efficient adjudication of the controversy, within the meaning of Fed. R. Civ. P. 23(b)(3).  The likelihood that individual members of the Iowa Class will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation.

358.　There are no unusual difficulties in the management of this case as a class action.

359.　The books and records of Defendants are material to the Iowa Class as they disclose the rate of pay, hours worked, and wages paid to members of the Iowa Class.

## COUNT I

### (INDIVIDUAL AND COLLECTIVE ACTION CLAIMS)

**VIOLATION OF THE FAIR LABOR STANDARDS ACT OF 1938**
*Failure to Pay Federal Minimum Wage*
**(Named Plaintiffs and FLSA Collective Action Class v. All Defendants)**

360.   Named Plaintiffs, JAMES MASSIE, ALEXANDRIA CHEVALIER, KEITH SKEEN, ANTONIO DUCKSWORTH, SR., BILLY CABLE, DAJUANA REYNOLDS, DANTZLER CATO, JAMAL ALLEN, JOHNSON BRACKINS, JONATHAN KUBICHEK, FERNANDO WARREN, WESLEY WORTHY, SR., RUFUS AUSTIN, DAVID STIEGELMEYER, II, DAVID BLANCHARD, WILLIAM HARRIS, MICHAEL JOYNER, KELLY COTE, PHEVOTT MADDEN, and MICHAEL WEGENER, and re-allege and incorporate by reference each and every allegation in the previous Paragraphs 1-53 and 55-82 as though fully set forth herein.

361.   At all times material herein, Named Plaintiffs and those similarly situated have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. § 201, *et seq.*

362.   Named Plaintiffs and others similarly situated, were "employees" covered by the FLSA, and Defendants were collectively and individually their "employer." Defendants, as Named Plaintiffs' employer, were and are obligated to

pay Named Plaintiffs and others similarly situated an hourly wage at least equal to that of the Federal minimum wage, $7.25 per hour ("Federal Minimum Wage").

363.   As set forth above, Defendants forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated Federal Minimum Wage of $7.25.

364.   The FLSA, along with related federal regulations, require an employer to compensate its employees at least minimum wage, currently $7.25 per hour, for all hours worked during any pay period.

365.   Based on Defendants' violations of the minimum wage provisions of the FLSA and related regulations, Defendants paid Named Plaintiffs and others similarly situated substantially below the Federal Minimum Wage for certain hours worked.   Defendants' failure and refusal to pay Named Plaintiffs and others similarly situated the Federal Minimum Wage for all hours worked violates, *inter alia*, 29 U.S.C. §§ 206(a) and 215(a)(2).   Unpaid wages are, therefore, due and owing to Named Plaintiffs and others similarly situated in an amount to conform with the Federal Minimum Wage for all hours worked.

366.   Defendants' failure and refusal to pay the Federal Minimum Wage was willful and malicious.

## **PRAYER FOR RELIEF ON COUNT I**

WHEREFORE, Named Plaintiffs, JAMES MASSIE, ALEXANDRIA CHEVALIER, KEITH SKEEN, ANTONIO DUCKSWORTH, SR., BILLY CABLE, DAJUANA REYNOLDS, DANTZLER CATO, JAMAL ALLEN, JOHNSON BRACKINS, JONATHAN KUBICHEK, FERNANDO WARREN, WESLEY WORTHY, SR., RUFUS AUSTIN, DAVID STIEGELMEYER, II, DAVID BLANCHARD, WILLIAM HARRIS, MICHAEL JOYNER, KELLY COTE, PHEVOTT MADDEN, and MICHAEL WEGENER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, and VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a collective action and class action on behalf of the proposed FLSA Collective Action Class and

    a.  Promptly issue notice pursuant to 29 U.S.C § 216(b) to all similarly-situated members of the FLSA Collective Action Class, which (a) apprises them of the pendency of this action, and (b) permits them to assert timely Fair Labor Standards Act claims in this action by filing individual Consent to Join forms pursuant to 29 U.S.C. § 216(b); and

    b.  Toll the statute of limitations on the claims of all members of the FLSA Collective Action Class from the date the original complaint was filed until the members of the FLSA Collective Action Class are provided with reasonable notice of the pendency of this action and a fair opportunity to exercise their rights to opt in as Plaintiffs;

B. Designate Named Plaintiffs as the representatives of the FLSA Collective Action Class;

C. Designate Named Plaintiffs' chosen counsel as counsel for the FLSA Collective Action Class;

D. Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Fair Labor Standards Act;

E. Award back pay to Named Plaintiffs and the members of the FLSA Collective Action Class, including a sum to compensate Named Plaintiffs and the members of the FLSA Collective Action Class for any increased tax liability on a lump-sum award of back pay;

F. Award liquidated damages to Named Plaintiffs and the members of the FLSA Collective Action Class in the maximum amount available under the Fair Labor Standards Act;

G. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Named Plaintiffs and the members of the FLSA Collective Action Class;

H. Award Named Plaintiffs and the members of the FLSA Collective Action Class pre-judgment and post-judgment interest available under the Fair Labor Standards Act;

I. Award Named Plaintiffs and the members of the FLSA Collective Action Class any other appropriate equitable relief; and

J. Award any additional relief that this Court deems just and proper.

## COUNT II

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE PENNSYLVANIA MINIMUM WAGE ACT OF 1968**
*Failure to Pay Pennsylvania Minimum Wage*
**(James Massie and Pennsylvania Class v. All Defendants)**

367.    Named Plaintiff, JAMES MASSIE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 1, 23-26, 30-33, 37-40, 54-74, and 83-95 as though fully set forth herein.

368.    Mr. Massie and the members of the Pennsylvania Class were "employees" and Defendants were each an "employer" covered by the PMWA.  43 Pa.C.S. § 333.103.

369.    Pursuant to the minimum wage provisions of the PMWA, Defendants were and are obligated to pay Mr. Massie and members of the Pennsylvania Class an hourly wage at least equal to that required by the PMWA, $7.25 per hour ("Pennsylvania Minimum Wage").  43 Pa.C.S. § 333.104(a.1).

370.    As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $7.25.

371.    Thus, Defendants have paid Mr. Massie and the Pennsylvania Class members substantially below the Pennsylvania Minimum Wage for certain hours

worked.  Defendants' failures and refusals to pay Mr. Massie and the Pennsylvania

Class members the Pennsylvania Minimum Wage for all hours worked violates the

PMWA.  43 Pa.C.S. § 333.104(a).  Unpaid wages are, therefore, due and owing to

Mr. Massie and the Pennsylvania Class members.

372.    Defendants' failure and refusal to pay the Pennsylvania Minimum

Wage was willful, intentional, and not in good faith.

<u>**PRAYER FOR RELIEF ON COUNT II**</u>

WHEREFORE, Named Plaintiff, JAMES MASSIE, individually and on

behalf of all others similarly situated, and all those opting into this lawsuit who

worked for Defendants within the Commonwealth of Pennsylvania, respectfully

request that this Honorable Court enter Judgment in their favor and against

Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY,

VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS,

and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed
Pennsylvania Class;

B.    Designate Mr. Massie as representative of the Pennsylvania Class;

C.    Designate Mr. Massie's chosen counsel as counsel for the
Pennsylvania Class;

D.    Declare and adjudge that Defendants' employment decisions, policies,
practices, and/or procedures challenged herein are harmful and in violation of the
Pennsylvania Minimum Wage Act;

E.    Award back pay to Mr. Massie and the members of the Pennsylvania Class, including a sum to compensate Mr. Massie and the members of the Pennsylvania Class for any increased tax liability on a lump-sum award of back pay;

F.    Award liquidated damages to Mr. Massie and the members of the Pennsylvania Class in the maximum amount available under the Pennsylvania Minimum Wage Act;

G.    Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Massie and the members of the Pennsylvania Class;

H.    Award Mr. Massie and the members of the Pennsylvania Class pre-judgment and post-judgment interest available under the Pennsylvania Minimum Wage Act;

I.    Award Mr. Massie and the members of the Pennsylvania Class any other appropriate equitable relief; and

J.    Award any additional relief that this Court deems just and proper.

## COUNT III

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE PENNSYLVANIA WAGE PAYMENT AND COLLECTION LAW
### *Failure to Pay Wages*
### (James Massie and Pennsylvania Class v. All Defendants)

373.    Named Plaintiff, JAMES MASSIE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 1, 23-26, 30-33, 37-40, 44-52, 54-74, 83-95, and 367-371 as though fully set forth herein.

374.    Defendants are each an "employer" as that term is defined under the PWPCL, and are thereby subject to liability for wages, liquidated damages and

reasonable attorneys' fees for non-payment of salary and/or wages under the PWPCL.  43 Pa.C.S. § 260.1, *et seq*.

375.   Individual Defendants are each an "employer" under the PWPCL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Massie and members of the Pennsylvania Class in accordance with the requirements of the PWPCL.

376.   Mr. Massie and members of the Pennsylvania Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to both the FLSA and PMWA.

377.   Defendants have failed to pay Mr. Massie and members of the Pennsylvania Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the FLSA and PMWA.  Defendants have, therefore, failed to regularly pay Mr. Massie and members of the Pennsylvania Class for all earned wages from the date they were first employed, through and including the present, in violation of the PWPCL.

378.   Accordingly, wages are due and owing to Mr. Massie and members of the Pennsylvania Class pursuant to Section 260.3(a) of the PWPCL.

379.   Defendants further violated the PWPCL through their failure to pay the Mr. Massie and members of the Pennsylvania Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 260.5(a) of the PWPCL.

380.   Defendants further violated the PWPCL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

381.   The total amount due to Mr. Massie and members of the Pennsylvania Class by Defendants constitutes wages under Section 260.2a. of the PWPCL, and failure to pay the amount due constitutes a violation of the PWPCL.

382.   In accordance with Section 260.10 of the PWPCL, by reason of Defendants' actions, Mr. Massie and members of the Pennsylvania Class are entitled to liquidated damages in an amount equal to the greater of five hundred dollars ($500.00) or twenty-five percent (25%) of the wages due, in addition to all wages due beyond thirty (30) days past Plaintiffs' regularly scheduled pay day.

383.   In accordance with Section 260.9a of the PWPCL, by reason of Defendants' actions, Mr. Massie and members of the Pennsylvania Class are entitled to reasonable attorneys' fees associated with this action.

384. The wages withheld from Mr. Massie and members of the Pennsylvania Class were not the result of any bona fide dispute.

385. Mr. Massie and the Pennsylvania Class are entitled to all legal and equitable remedies available for violations of the PWPCL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the PWPCL.

## PRAYER FOR RELIEF ON COUNT III

WHEREFORE, Named Plaintiff, JAMES MASSIE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the Commonwealth of Pennsylvania, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A. Designate this action as a class action on behalf of the proposed Pennsylvania Class;

B. Designate Mr. Massie as the representative of the Pennsylvania Class;

C. Designate Mr. Massie's chosen counsel as counsel for the Pennsylvania Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Pennsylvania Wage Payment and Collection Law;

E.     Award back pay to Mr. Massie and the members of the Pennsylvania Class, including a sum to compensate Mr. Massie and the members of the Pennsylvania Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Mr. Massie and the members of the Pennsylvania Class in the maximum amount available under the Pennsylvania Wage Payment and Collection Law;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Massie and the members of the Pennsylvania Class;

H.     Award Mr. Massie and the members of the Pennsylvania Class pre-judgment and post-judgment interest available under the Pennsylvania Wage Payment and Collection Law;

I.     Award Mr. Massie and the members of the Pennsylvania Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT IV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE NEW JERSEY WAGE AND HOUR LAW
### *Failure to Pay New Jersey Minimum Wage*
### (Alexandria Chevalier and New Jersey Class v. All Defendants)

386.   Named Plaintiff, ALEXANDRIA CHEVALIER, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 2, 23-26, 30-33, 37-40, 44-52, 54-74, and 96-108 as though fully set forth herein.

387.   Ms. Chevalier and the members of the New Jersey Class were "employees" and Defendants were each an "employer" covered by the NJWHL. N.J. Stat. Ann. § 34:11-56a1 (West).

388.   Pursuant to the minimum wage provisions of the NJWHL, Defendants were and are obligated to pay Ms. Chevalier and members of the New Jersey Class an hourly wage at least equal to that required by the NJWHL, $11.00 per hour ("New Jersey Minimum Wage").  N.J. Stat. Ann. § 34:11-56a4 (West).

389.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $11.00.

390.   Thus, Defendants have paid Ms. Chevalier and the New Jersey Class members substantially below the New Jersey Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Ms. Chevalier and the New Jersey Class members the New Jersey Minimum Wage for all hours worked violates the NJWHL.  *Id.*  Unpaid wages are, therefore, due and owing to Ms. Chevalier and the New Jersey Class members.

391.   In accordance with Section 34:11-56a25 of the NJWHL, by reason of Defendants' actions, Ms. Chevalier and members of the New Jersey Class are entitled to liquidated damages in an additional amount equal to two-hundred percent

(200%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

392.   Defendants' failure and refusal to pay the New Jersey Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT IV**

WHEREFORE, Named Plaintiff, ALEXANDRIA CHEVALIER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of New Jersey, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.   Designate this action as a class action on behalf of the proposed New Jersey Class;

B.   Designate Ms. Chevalier as representative of the New Jersey Class;

C.   Designate Ms. Chevalier's chosen counsel as counsel for the New Jersey Class;

D.   Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the New Jersey Wage and Hour Law;

E.   Award back pay to Ms. Chevalier and the members of the New Jersey Class, including a sum to compensate Ms. Chevalier and the members of the New Jersey Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Ms. Chevalier and the members of the New Jersey Class in the maximum amount available under the New Jersey Wage and Hour Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Chevalier and the members of the New Jersey Class;

H.      Award Ms. Chevalier and the members of the New Jersey Class pre-judgment and post-judgment interest available under the New Jersey Wage and Hour Law;

I.      Award Ms. Chevalier and the members of the New Jersey Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT V

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE NEW JERSEY WAGE PAYMENT LAW**
*Failure to Pay Wages*
**(Alexandria Chevalier and New Jersey Class v. All Defendants)**

393.    Named Plaintiff, ALEXANDRIA CHEVALIER, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 2, 23-26, 30-33, 37-40, 44-52, 54-74, 96-108, and 386-391 as though fully set forth herein.

394.    Defendants are each an "employer" as that term is defined under the NJWPL, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the NJWPL.  N.J. Stat. Ann. § 34:11-4.1 (West).

395.    Individual Defendants are each an "employer" under the NJWPL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Ms. Chevalier and members of the New Jersey Class in accordance with the requirements of the NJWPL.

396.    Ms. Chevalier and members of the New Jersey Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $11.00 for all hours worked during any pay period, as provided for pursuant to both the FLSA and NJWHL.

397.    Defendants have failed to pay Ms. Chevalier and members of the New Jersey Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $11.00, for all hours worked during every pay period, in violation of the FLSA and NJWHL.  Defendants have, therefore, failed to regularly pay Ms. Chevalier and members of the New Jersey Class for all earned wages from the date they were first employed, through and including the present, in violation of the NJWPL.

398.    Accordingly, wages are due and owing to Ms. Chevalier and members of the New Jersey Class pursuant to Section 34:11-4.1 of the NJWPL.

399.    Defendants further violated the NJWPL through their failure to pay the Ms. Chevalier and members of the New Jersey Class at their regular rate of pay

for all wages due for work they performed prior to their termination of employment pursuant to Section 34:11-4.3 of the NJWPL.

400.  Defendants further violated the NJWPL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

401.  The total amount due to Ms. Chevalier and members of the New Jersey Class by Defendants constitutes wages under Section 34:11-4.1 of the NJWPL, and failure to pay the amount due constitutes a violation of the NJWPL.

402.  In accordance with Section 34:11-4.10 of the NJWPL, by reason of Defendants' actions, Ms. Chevalier and members of the New Jersey Class are entitled to liquidated damages in an additional amount equal to two-hundred percent (200%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

403.  The wages withheld from Ms. Chevalier and members of the New Jersey Class were not the result of any bona fide dispute.

404.  Ms. Chevalier and the New Jersey Class are entitled to all legal and equitable remedies available for violations of the NJWPL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest,

reasonable attorneys' fees and litigation costs, and other compensation pursuant to the NJWPL.

## **PRAYER FOR RELIEF ON COUNT V**

WHEREFORE, Named Plaintiff, ALEXANDRIA CHEVALIER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of New Jersey, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed New Jersey Class;

B.     Designate Ms. Chevalier as the representative of the New Jersey Class;

C.     Designate Ms. Chevalier's chosen counsel as counsel for the New Jersey Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the New Jersey Wage Payment Law;

E.     Award back pay to Ms. Chevalier and the members of the New Jersey Class, including a sum to compensate Ms. Chevalier and the members of the New Jersey Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Ms. Chevalier and the members of the New Jersey Class in the maximum amount available under the New Jersey Wage Payment Law;

G. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Chevalier and the members of the New Jersey Class;

H. Award Ms. Chevalier and the members of the New Jersey Class pre-judgment and post-judgment interest available under the New Jersey Wage Payment Law;

I. Award Ms. Chevalier and the members of the New Jersey Class any other appropriate equitable relief; and

J. Award any additional relief that this Court deems just and proper.

## COUNT VI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE KENTUCKY WAGES AND HOUR ACT
*Failure to Pay Kentucky Minimum Wage*
**(Keith Skeen and Kentucky Class v. All Defendants)**

405. Named Plaintiff, KEITH SKEEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 3, 23-26, 30-33, 37-40, 44-52, 54-74, and 109-121 as though fully set forth herein.

406. Mr. Skeen and the members of the Kentucky Class were "employees" and Defendants were each an "employer" covered by the KWHA. Ky. Rev. Stat. Ann. § 337.010 (West).

407. Pursuant to the minimum wage provisions of the KWHA, Defendants were and are obligated to pay Mr. Skeen and members of the Kentucky

Class an hourly wage at least equal to that required by the KMWHA, $7.25 per hour ("Kentucky Minimum Wage").  Ky. Rev. Stat. Ann. § 337.275 (West).

408.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $7.25.

409.   Thus, Defendants have paid Mr. Skeen and the Kentucky Class members substantially below the Kentucky Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Mr. Skeen and the Kentucky Class members the Kentucky Minimum Wage for all hours worked violates the KWHA.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Skeen and the Kentucky Class members.

410.   Defendants' failure and refusal to pay the Kentucky Minimum Wage was willful, intentional, and not in good faith.

## PRAYER FOR RELIEF ON COUNT VI

WHEREFORE, Named Plaintiff, KEITH SKEEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the Commonwealth of Kentucky, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY,

VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A. Designate this action as a class action on behalf of the proposed Kentucky Class;

B. Designate Mr. Skeen as representative of the Kentucky Class;

C. Designate Mr. Skeen's chosen counsel as counsel for the Kentucky Class;

D. Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Kentucky Wages and Hour Act;

E. Award back pay to Mr. Skeen and the members of the Kentucky Class, including a sum to compensate Mr. Skeen and the members of the Kentucky Class for any increased tax liability on a lump-sum award of back pay;

F. Award liquidated damages to Mr. Skeen and the members of the Kentucky Class in the maximum amount available under the Kentucky Wages and Hour Act;

G. Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Skeen and the members of the Kentucky Class;

H. Award Mr. Skeen and the members of the Kentucky Class pre-judgment and post-judgment interest available under the Kentucky Wages and Hour Act;

I. Award Mr. Skeen and the members of the Kentucky Class any other appropriate equitable relief; and

J. Award any additional relief that this Court deems just and proper.

## COUNT VII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE KENTUCKY WAGES AND HOUR ACT**
***Failure to Pay Wages***
**(Keith Skeen and Kentucky Class v. All Defendants)**

411.   Named Plaintiff, KEITH SKEEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 3, 23-26, 30-33, 37-40, 44-52, 54-74, 109-121, and 405-409 as though fully set forth herein.

412.   Defendants are each an "employer" as that term is defined under the KWHA, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the KWHA.  Ky. Rev. Stat. Ann. § 337.010 (West).

413.   Individual Defendants are each an "employer" under the KWHA because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Skeen and members of the Kentucky Class in accordance with the requirements of the KWHA.

414.   Mr. Skeen and members of the Kentucky Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to both the FLSA and KWHA.

415.   Defendants have failed to pay Mr. Skeen and members of the Kentucky Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the FLSA and KWHA.   Defendants have, therefore, failed to regularly pay Mr. Skeen and members of the Kentucky Class for all earned wages from the date they were first employed, through and including the present, in violation of the KWHA.

416.   Accordingly, wages are due and owing to Mr. Skeen and members of the Kentucky Class pursuant to Sections 337.020 and 337.060 of the KWHA.

417.   Defendants further violated the KWHA through their failure to pay the Mr. Skeen and members of the Kentucky Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 337.055 of the KWHA.

418.   Defendants further violated the KWHA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.   In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

419.    The total amount due to Mr. Skeen and members of the Kentucky Class by Defendants constitutes wages under Section 337.010 of the KWHA, and failure to pay the amount due constitutes a violation of the KWHA.

420.    In accordance with Section 337.385 of the KWHA, by reason of Defendants' actions, Mr. Skeen and members of the Kentucky Class are entitled to liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages.

421.    In accordance with 337.385 of the KWHA, by reason of Defendants' actions, Mr. Skeen and members of the Kentucky Class are entitled to reasonable attorneys' fees associated with this action.

422.    The wages withheld from Mr. Skeen and members of the Kentucky Class were not the result of any bona fide dispute.

423.    Mr. Skeen and the Kentucky Class are entitled to all legal and equitable remedies available for violations of the KWHA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the KWHA.

## PRAYER FOR RELIEF ON COUNT VII

WHEREFORE, Named Plaintiff, KEITH SKEEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who

worked for Defendants within the Commonwealth of Kentucky, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Kentucky Class;

B.      Designate Mr. Skeen as the representative of the Kentucky Class;

C.      Designate Mr. Skeen's chosen counsel as counsel for the Kentucky Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Kentucky Wages and Hour Act;

E.      Award back pay to Mr. Skeen and the members of the Kentucky Class, including a sum to compensate Mr. Skeen and the members of the Kentucky Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Mr. Skeen and the members of the Kentucky Class in the maximum amount available under the Kentucky Wages and Hour Act;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Skeen and the members of the Kentucky Class;

H.      Award Mr. Skeen and the members of the Kentucky Class pre-judgment and post-judgment interest available under the Kentucky Wages and Hour Act;

I.      Award Mr. Skeen and the members of the Kentucky Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT VIII

**(INDIVIDUAL AND CLASS ACTION CLAIMS)**

**BREACH OF CONTRACT - MISSISSIPPI**
***Failure to Pay Wages***
**(Antonio Ducksworth, Sr. and Mississippi Class v. All Defendants)**

424.    Named Plaintiff, ANTONIO DUCKSWORTH, SR., re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 4, 23-26, 30-33, 37-40, 44-52, 54-74, and 122-134 as though fully set forth herein.

425.    Mr. Ducksworth and members of the Mississippi Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Mississippi law wherein Defendants agreed to pay Mr. Ducksworth and members of the Mississippi Class a specified hourly rate for each hour worked.

426.    Despite Mr. Ducksworth and members of the Mississippi Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

427.    Defendants failure and ongoing refusal to pay Mr. Ducksworth and members of the Mississippi Class all wages owed for all work performed constitute

a breach of contract pursuant to Mississippi's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

428.   In the alternative to the breach of contract class claims, Mr. Ducksworth and members of the Mississippi Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

429.   The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Ducksworth and members of the Mississippi Class for the work they performed without compensation.

## **PRAYER FOR RELIEF ON COUNT VIII**

WHEREFORE, Named Plaintiff, ANTONIO DUCKSWORTH, SR., individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Mississippi, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Mississippi Class;

B.      Designate Mr. Ducksworth as the representative of the Mississippi Class;

C.      Designate Mr. Ducksworth's chosen counsel as counsel for the Mississippi Class;

D.      Enter judgment in favor of Mr. Ducksworth and members of the Mississippi Class for Breach of Contract;

E.      Award Mr. Ducksworth and members of the Mississippi Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.      Award back pay to Mr. Ducksworth and members of the Mississippi Class, including a sum to compensate Mr. Ducksworth and members of the Mississippi Class for any increased tax liability on a lump-sum award of back pay;

G.      Award Mr. Ducksworth and members of the Mississippi Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.      Award Mr. Ducksworth and members of the Mississippi Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.      Award Mr. Ducksworth and members of the Mississippi Class and the members of the Kentucky Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT IX

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

### BREACH OF CONTRACT - TENNESSEE
#### *Failure to Pay Wages*
### (Billy Cable and Tennessee Class v. All Defendants)

430.   Named Plaintiff, BILLY CABLE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 5, 23-26, 30-33, 37-40, 44-52, 54-74, and 135-147 as though fully set forth herein.

431.   Mr. Cable and members of the Tennessee Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Tennessee law wherein Defendants agreed to pay Mr. Cable and members of the Tennessee Class a specified hourly rate for each hour worked.

432.   Despite Mr. Cable and members of the Tennessee Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

433.   Defendants failure and ongoing refusal to pay Mr. Cable and members of the Tennessee Class all wages owed for all work performed constitute a breach of contract pursuant to Tennessee's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

434.    In the alternative to the breach of contract class claims, Mr. Cable and members of the Tennessee Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

435.    The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Cable and members of the Tennessee Class for the work they performed without compensation.

## PRAYER FOR RELIEF ON COUNT IX

WHEREFORE, Named Plaintiff, BILLY CABLE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Tennessee, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Tennessee Class;

B.    Designate Mr. Cable as the representative of the Tennessee Class;

C.     Designate Mr. Cable's chosen counsel as counsel for the Tennessee Class;

D.     Enter judgment in favor of Mr. Cable and members of the Tennessee Class for Breach of Contract;

E.     Award Mr. Cable and members of the Tennessee Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.     Award back pay to Mr. Cable and members of the Tennessee Class, including a sum to compensate Mr. Cable and members of the Tennessee Class for any increased tax liability on a lump-sum award of back pay;

G.     Award Mr. Cable and members of the Tennessee Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.     Award Mr. Cable and members of the Tennessee Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.     Award Mr. Cable and members of the Tennessee Class and the members of the Tennessee Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT X

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE NEBRASKA WAGE AND HOUR ACT
### *Failure to Pay Nebraska Minimum Wage*
### (Dajuana Reynolds and Nebraska Class v. All Defendants)

436.   Named Plaintiff, DAJUANA REYNOLDS, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 6, 23-26, 30-33, 37-40, 44-52, 54-74, and 148-160 as though fully set forth herein.

437.   Ms. Reynolds and the members of the Nebraska Class were "employees" and Defendants were each an "employer" covered by the NWHA. Neb. Rev. Stat. Ann. § 48-1202 (West).

438.   Pursuant to the minimum wage provisions of the NWHA, Defendants were and are obligated to pay Ms. Reynolds and members of the Nebraska Class an hourly wage at least equal to that required by the NWHA, $9.00 per hour ("Nebraska Minimum Wage").  Neb. Rev. Stat. Ann. § 48-1203 (West).

439.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $9.00.

440.   Thus, Defendants have paid Ms. Reynolds and the Nebraska Class members substantially below the Nebraska Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Ms. Reynolds and the Nebraska Class members the Nebraska Minimum Wage for all hours worked violates the NWHA.  *Id.*  Unpaid wages are, therefore, due and owing to Ms. Reynolds and the Nebraska Class members.

441.   Defendants' failure and refusal to pay the Nebraska Minimum Wage was willful, intentional, and not in good faith.

## PRAYER FOR RELIEF ON COUNT X

WHEREFORE, Named Plaintiff, DAJUANA REYNOLDS, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Nebraska, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Nebraska Class;

B.      Designate Ms. Reynolds as representative of the Nebraska Class;

C.      Designate Ms. Reynolds' chosen counsel as counsel for the Nebraska Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Nebraska Wage and Hour Act;

E.      Award back pay to Ms. Reynolds and the members of the Nebraska Class, including a sum to compensate Ms. Reynolds and the members of the Nebraska Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Ms. Reynolds and the members of the Nebraska Class in the maximum amount available under the Nebraska Wage and Hour Act;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Reynolds and the members of the Nebraska Class;

H.      Award Ms. Reynolds and the members of the Nebraska Class pre-judgment and post-judgment interest available under the Nebraska Wage and Hour Act;

I.      Award Ms. Reynolds and the members of the Nebraska Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE NEBRASKA WAGE PAYMENT
AND COLLECTION ACT**
*Failure to Pay Wages*
**(Dajuana Reynolds and Nebraska Class v. All Defendants)**

442.    Named Plaintiff, DAJUANA REYNOLDS, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 6, 23-26, 30-33, 37-40, 44-52, 54-74, 148-160, and 436-440 as though fully set forth herein.

443.    Defendants are each an "employer" as that term is defined under the NWPCA, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the NWPCA.  Neb. Rev. Stat. Ann. §§ 48-1229 -1232 (West).

444.    Individual Defendants are each an "employer" under the NWPCA because each of the Individual Defendants had control over Defendants' pay

policies and participated in the decision to fail to pay Ms. Reynolds and members of the Nebraska Class in accordance with the requirements of the NWPCA.

445.   Ms. Reynolds and members of the Nebraska Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $9.00 for all hours worked during any pay period, as provided for pursuant to both the FLSA and NWHA.

446.   Defendants have failed to pay Ms. Reynolds and members of the Nebraska Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $9.00, for all hours worked during every pay period, in violation of the FLSA and NWHA.   Defendants have, therefore, failed to regularly pay Ms. Reynolds and members of the Nebraska Class for all earned wages from the date they were first employed, through and including the present, in violation of the NWPCA.

447.   Accordingly, wages are due and owing to Ms. Reynolds and members of the Nebraska Class pursuant to Section 48-1231 of the NWPCA.

448.   Defendants further violated the NWPCA through their failure to pay the Ms. Reynolds and members of the Nebraska Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 48-1230.01 of the NWPCA.

449.   Defendants further violated the NWPCA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

450.   The total amount due to Ms. Reynolds and members of the Nebraska Class by Defendants constitutes wages under Section 48-1229 of the NWPCA, and failure to pay the amount due constitutes a violation of the NWPCA.

451.   In accordance with Section 48-1232 NWPCA, by reason of Defendants' actions, Ms. Reynolds and members of the Nebraska Class are entitled to liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages or two-hundred percent (200%) of the full amount of the unpaid wages if the nonpayment of wages is found to be willful.

452.   The wages withheld from Ms. Reynolds and members of the Nebraska Class were not the result of any bona fide dispute.

453.   Ms. Reynolds and the Nebraska Class are entitled to all legal and equitable remedies available for violations of the NWPCA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the NWPCA.

## **PRAYER FOR RELIEF ON COUNT XI**

WHEREFORE, Named Plaintiff, DAJUANA REYNOLDS, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Nebraska, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Nebraska Class;

B.      Designate Ms. Reynolds as the representative of the Nebraska Class;

C.      Designate Ms. Reynolds' chosen counsel as counsel for the Nebraska Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Nebraska Wage Payment and Collection Act;

E.      Award back pay to Ms. Reynolds and the members of the Nebraska Class, including a sum to compensate Ms. Reynolds and the members of the Nebraska Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Ms. Reynolds and the members of the Nebraska Class in the maximum amount available under the Nebraska Wage Payment and Collection Act;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Reynolds and the members of the Nebraska Class;

H.     Award Ms. Reynolds and the members of the Nebraska Class pre-judgment and post-judgment interest available under the Nebraska Wage Payment and Collection Act;

I.     Award Ms. Reynolds and the members of the Nebraska Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### BREACH OF CONTRACT - LOUISIANA
### *Failure to Pay Wages*
### (Dantzler Cato and Louisiana Class v. All Defendants)

454.   Named Plaintiff, DANTZLER CATO, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 7, 23-26, 30-33, 37-40, 44-52, 54-74, and 161-173 as though fully set forth herein.

455.   Ms. Cato and members of the Louisiana Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Louisiana law wherein Defendants agreed to pay Ms. Cato and members of the Louisiana Class a specified hourly rate for each hour worked.

456.   Despite Ms. Cato and members of the Louisiana Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

457.    Defendants failure and ongoing refusal to pay Ms. Cato and members of the Louisiana Class all wages owed for all work performed constitute a breach of contract pursuant to Louisiana's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

458.    In the alternative to the breach of contract class claims, Ms. Cato and members of the Louisiana Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

459.    The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Ms. Cato and members of the Louisiana Class for the work they performed without compensation.

## PRAYER FOR RELIEF ON COUNT XII

WHEREFORE, Named Plaintiff, DANTZLER CATO, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Louisiana, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed Louisiana Class;

B.     Designate Ms. Cato as the representative of the Louisiana Class;

C.     Designate Ms. Cato's chosen counsel as counsel for the Louisiana Class;

D.     Enter judgment in favor of Ms. Cato and members of the Louisiana Class for Breach of Contract;

E.     Award Ms. Cato and members of the Louisiana Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.     Award back pay to Ms. Cato and members of the Louisiana Class, including a sum to compensate Ms. Cato and members of the Louisiana Class for any increased tax liability on a lump-sum award of back pay;

G.     Award Ms. Cato and members of the Louisiana Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.     Award Ms. Cato and members of the Louisiana Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.     Award Ms. Cato and members of the Louisiana Class and the members of the Louisiana Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XIII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE MICHIGAN WORKFORCE OPPORTUNITY WAGE ACT
### *Failure to Pay Michigan Minimum Wage*
### (Jamal Allen and Michigan Class v. All Defendants)

460.    Named Plaintiff, JAMAL ALLEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 8, 23-26, 30-33, 37-40, 44-52, 54-74, and 174-187 as though fully set forth herein.

461.    Mr. Allen and the members of the Michigan Class were "employees" and Defendants were each an "employer" covered by the MWOWA.  Mich. Comp. Laws Ann. § 408.412 (West).

462.    Pursuant to the minimum wage provisions of the MWOWA, Defendants were and are obligated to pay Mr. Allen and members of the Michigan Class an hourly wage at least equal to that required by the MWOWA, $9.45 per hour ("Michigan Minimum Wage").  Mich. Comp. Laws Ann. § 408.414 (West).

463.    As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $9.45.

464.    Thus, Defendants have paid Mr. Allen and the Michigan Class members substantially below the Michigan Minimum Wage for certain hours

worked. Defendants' failures and refusals to pay Mr. Allen and the Michigan Class members the Michigan Minimum Wage for all hours worked violates the MWOWA. *Id.* Unpaid wages are, therefore, due and owing to Mr. Allen and the Michigan Class members.

465. In accordance with Section 408.419 of the MWOWA, by reason of Defendants' actions, Mr. Allen and members of the Michigan Class are entitled to liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

466. Defendants' failure and refusal to pay the Michigan Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XIII**

WHEREFORE, Named Plaintiff, JAMAL ALLEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Michigan, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A. Designate this action as a class action on behalf of the proposed Michigan Class;

B.     Designate Mr. Allen as representative of the Michigan Class;

C.     Designate Mr. Allen's chosen counsel as counsel for the Michigan Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Michigan Workforce Opportunity Wage Act;

E.     Award back pay to Mr. Allen and the members of the Michigan Class, including a sum to compensate Mr. Allen and the members of the Michigan Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Mr. Allen and the members of the Michigan Class in the maximum amount available under the Michigan Workforce Opportunity Wage Act;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Allen and the members of the Michigan Class;

H.     Award Mr. Allen and the members of the Michigan Class pre-judgment and post-judgment interest available under the Michigan Workforce Opportunity Wage Act;

I.     Award Mr. Allen and the members of the Michigan Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XIV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### BREACH OF CONTRACT - MICHIGAN
### *Failure to Pay Wages*
### (Jamal Allen and Michigan Class v. All Defendants)

467.    Named Plaintiff, JAMAL ALLEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 8, 23-26, 30-33, 37-40, 44-52, 54-74, 174-187, and 460-465 as though fully set forth herein.

468.    Mr. Allen and members of the Michigan Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Michigan law wherein Defendants agreed to pay Mr. Allen and members of the Michigan Class a specified hourly rate for each hour worked.

469.    Despite Mr. Allen and members of the Michigan Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

470.    Defendants failure and ongoing refusal to pay Mr. Allen and members of the Michigan Class all wages owed for all work performed constitute a breach of contract pursuant to Michigan's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

471.   In the alternative to the breach of contract class claims, Mr. Allen and members of the Michigan Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

472.   The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Allen and members of the Michigan Class for the work they performed without compensation.

## PRAYER FOR RELIEF ON COUNT XIV

WHEREFORE, Named Plaintiff, JAMAL ALLEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Michigan, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.   Designate this action as a class action on behalf of the proposed Michigan Class;

B.   Designate Mr. Allen as the representative of the Michigan Class;

C.   Designate Mr. Allen's chosen counsel as counsel for the Michigan Class;

D.     Enter judgment in favor of Mr. Allen and members of the Michigan Class for Breach of Contract;

E.     Award Mr. Allen and members of the Michigan Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.      Award back pay to Mr. Allen and members of the Michigan Class, including a sum to compensate Mr. Allen and members of the Michigan Class for any increased tax liability on a lump-sum award of back pay;

G.     Award Mr. Allen and members of the Michigan Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.     Award Mr. Allen and members of the Michigan Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.     Award Mr. Allen and members of the Michigan Class and the members of the Michigan Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### BREACH OF CONTRACT - TEXAS
### *Failure to Pay Wages*
### (Johnson Brackins and Texas Class v. All Defendants)

473.    Named Plaintiff, JOHNSON BRACKINS, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 9, 23-26, 30-33, 37-40, 44-52, 54-74, and 188-200 as though fully set forth herein.

474.    Mr. Brackins and members of the Texas Class assert breach of contract claims because Defendants entered into valid and enforceable contracts

143

with them pursuant to Texas law wherein Defendants agreed to pay Mr. Brackins and members of the Texas Class a specified hourly rate for each hour worked.

475.   Despite Mr. Brackins and members of the Texas Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

476.   Defendants failure and ongoing refusal to pay Mr. Brackins and members of the Texas Class all wages owed for all work performed constitute a breach of contract pursuant to Texas' law of contracts, quantum meruit, quasi-contract or unjust enrichment.

477.   In the alternative to the breach of contract class claims, Mr. Brackins and members of the Texas Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

478.   The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Brackins and members of the Texas Class for the work they performed without compensation.

## **PRAYER FOR RELIEF ON COUNT XV**

WHEREFORE, Named Plaintiff, JOHNSON BRACKINS, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Texas, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Texas Class;

B.      Designate Mr. Brackins as the representative of the Texas Class;

C.      Designate Mr. Brackins' chosen counsel as counsel for the Texas Class;

D.      Enter judgment in favor of Mr. Brackins and members of the Texas Class for Breach of Contract;

E.      Award Mr. Brackins and members of the Texas Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.      Award back pay to Mr. Brackins and members of the Texas Class, including a sum to compensate Mr. Brackins and members of the Texas Class for any increased tax liability on a lump-sum award of back pay;

G.      Award Mr. Brackins and members of the Texas Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.     Award Mr. Brackins and members of the Texas Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.     Award Mr. Brackins and members of the Texas Class and the members of the Texas Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XVI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE MINNESOTA
FAIR LABOR STANDARDS ACT**
***Failure to Pay Minnesota Minimum Wage***
**(Jonathan Kubichek and Minnesota Class v. All Defendants)**

479.   Named Plaintiff, JONATHAN KUBICHEK, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 10, 23-26, 30-33, 37-40, 44-52, 54-74, and 201-213 as though fully set forth herein.

480.   Mr. Kubichek and the members of the Minnesota Class were "employees" and Defendants were each an "employer" covered by the MFLSA. Minn. Stat. Ann. § 177.23 (West).

481.   Pursuant to the minimum wage provisions of the MFLSA, Defendants were and are obligated to pay Mr. Kubichek and members of the Minnesota Class an hourly wage at least equal to that required by the MFLSA, $10.08 per hour ("Minnesota Minimum Wage").  Minn. Stat. Ann. § 177.24 (West).

482.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the

hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $10.08.

483.    Thus, Defendants have paid Mr. Kubichek and the Minnesota Class members substantially below the Minnesota Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Mr. Kubichek and the Minnesota Class members the Minnesota Minimum Wage for all hours worked violates the MFLSA.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Kubichek and the Minnesota Class members.

484.    In accordance with Section 177.27 of the MFLSA, by reason of Defendants' actions, Mr. Kubichek and members of the Minnesota Class are entitled to compensatory damages, liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

485.    Defendants' failure and refusal to pay the Minnesota Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XVI**

WHEREFORE, Named Plaintiff, JONATHAN KUBICHEK, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Minnesota, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants,

POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed Minnesota Class;

B.     Designate Mr. Kubichek as representative of the Minnesota Class;

C.     Designate Mr. Kubichek's chosen counsel as counsel for the Minnesota Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Minnesota Fair Labor Standards Act;

E.     Award back pay to Mr. Kubichek and the members of the Minnesota Class, including a sum to compensate Mr. Kubichek and the members of the Minnesota Class for any increased tax liability on a lump-sum award of back pay;

F.     Award compensatory and liquidated damages to Mr. Kubichek and the members of the Minnesota Class in the maximum amount available under the Minnesota Fair Labor Standards Act;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Kubichek and the members of the Minnesota Class;

H.     Award Mr. Kubichek and the members of the Minnesota Class pre-judgment and post-judgment interest available under the Minnesota Fair Labor Standards Act;

I.     Award Mr. Kubichek and the members of the Minnesota Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XVII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE MINNESOTA WAGE PAYMENT
AND RECORDKEEPING LAW**
*Failure to Pay Wages*
**(Jonathan Kubichek and Minnesota Class v. All Defendants)**

486.   Named   Plaintiff,   JONATHAN   KUBICHEK,   re-alleges   and incorporates by reference each and every allegation in the previous Paragraphs 10, 23-26, 30-33, 37-40, 44-52, 54-74, 201-213, and 479-484 as though fully set forth herein.

487.   Defendants are each an "employer" as that term is defined under the MWPRL, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the MWPRL.  Minn. Stat. Ann. § 181.171 (West).

488.   Individual Defendants are each an "employer" under the MWPRL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Kubichek and members of the Minnesota Class in accordance with the requirements of the MWPRL.

489.   Mr. Kubichek and members of the Minnesota Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $10.08 for all hours worked during any pay period, as provided for pursuant to both the FLSA and MFLSA.

149

490.    Defendants have failed to pay Mr. Kubichek and members of the Minnesota Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $10.08, for all hours worked during every pay period, in violation of the FLSA and MFLSA.  Defendants have, therefore, failed to regularly pay Mr. Kubichek and members of the Minnesota Class for all earned wages from the date they were first employed, through and including the present, in violation of the MWPRL.

491.    Accordingly, wages are due and owing to Mr. Kubichek and members of the Minnesota Class pursuant to Section 181.101 of the MWPRL.

492.    Defendants further violated the MWPRL through their failure to pay the Mr. Kubichek and members of the Minnesota Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 181.101 of the MWPRL.

493.    Defendants further violated the MWPRL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

494.     The total amount due to Mr. Kubichek and members of the Minnesota Class by Defendants constitutes wages under Section 181.101 of the MWPRL, and failure to pay the amount due constitutes a violation of the MWPRL.

495.     In accordance with Sections 181.101 and 181.171 of the MWPRL and Section 177.27 of the MFLSA, by reason of Defendants' actions, Mr. Kubichek and members of the Minnesota Class are entitled to entitled to compensatory damages, liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

496.     The wages withheld from Mr. Kubichek and members of the Minnesota Class were not the result of any bona fide dispute.

497.     Mr. Kubichek and the Minnesota Class are entitled to all legal and equitable remedies available for violations of the MWPRL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the MWPRL.

## PRAYER FOR RELIEF ON COUNT XVII

WHEREFORE, Named Plaintiff, JONATHAN KUBICHEK, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Minnesota, respectfully request that

this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Minnesota Class;

B.      Designate Mr. Kubichek as the representative of the Minnesota Class;

C.      Designate Mr. Kubichek's chosen counsel as counsel for the Minnesota Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Minnesota Wage Payment and Recordkeeping Law;

E.      Award back pay to Mr. Kubichek and the members of the Minnesota Class, including a sum to compensate Mr. Kubichek and the members of the Minnesota Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Mr. Kubichek and the members of the Minnesota Class in the maximum amount available under the Minnesota Wage Payment and Recordkeeping Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Kubichek and the members of the Minnesota Class;

H.      Award Mr. Kubichek and the members of the Minnesota Class pre-judgment and post-judgment interest available under the Minnesota Wage Payment and Recordkeeping Law;

I.      Award Mr. Kubichek and the members of the Minnesota Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XVIII

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE MISSOURI
### MINIMUM WAGE LAW
*Failure to Pay Missouri Minimum Wage*
**(Fernando Warren and Missouri Class v. All Defendants)**

498.    Named Plaintiff, FERNANDO WARREN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 11, 23-26, 30-33, 37-40, 44-52, 54-74, and 214-227 as though fully set forth herein.

499.    Mr. Warren and the members of the Missouri Class were "employees" and Defendants were each an "employer" covered by the MMWL.  Mo. Ann. Stat. § 290.500 (West).

500.    Pursuant to the minimum wage provisions of the MMWL, Defendants were and are obligated to pay Mr. Warren and members of the Missouri Class an hourly wage at least equal to that required by the MMWL, $10.30 per hour ("Missouri Minimum Wage").  Mo. Ann. Stat. § 290.502 (West).  As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $10.30.

501.    Thus, Defendants have paid Mr. Warren and the Missouri Class members substantially below the Missouri Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Mr. Warren and the Missouri Class members the Missouri Minimum Wage for all hours worked violates the MMWL.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Warren and the Missouri Class members.

502.    In accordance with Section 290.527 of the MMWL, by reason of Defendants' actions, Mr. Warren and members of the Missouri Class are entitled to compensatory damages, liquidated damages in an additional amount equal to two-hundred percent (200%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

503.    Defendants' failure and refusal to pay the Missouri Minimum Wage was willful, intentional, and not in good faith.

### **PRAYER FOR RELIEF ON COUNT XVIII**

WHEREFORE, Named Plaintiff, FERNANDO WARREN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Missouri, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET   SERVICES,   INC.,   THE   STAGELINE   COMPANY,   VILANO

EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.　　Designate this action as a class action on behalf of the proposed Missouri Class;

B.　　Designate Mr. Warren as representative of the Missouri Class;

C.　　Designate Mr. Warren's chosen counsel as counsel for the Missouri Class;

D.　　Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Missouri Minimum Wage Law;

E.　　Award back pay to Mr. Warren and the members of the Missouri Class, including a sum to compensate Mr. Warren and the members of the Missouri Class for any increased tax liability on a lump-sum award of back pay;

F.　　Award compensatory and liquidated damages to Mr. Warren and the members of the Missouri Class in the maximum amount available under the Missouri Minimum Wage Law;

G.　　Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Warren and the members of the Missouri Class;

H.　　Award Mr. Warren and the members of the Missouri Class pre-judgment and post-judgment interest available under the Missouri Minimum Wage Law;

I.　　Award Mr. Warren and the members of the Missouri Class any other appropriate equitable relief; and

J.　　Award any additional relief that this Court deems just and proper.

# COUNT XIX

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

## BREACH OF CONTRACT - MISSOURI
### *Failure to Pay Wages*
### (Fernando Warren and Missouri Class v. All Defendants)

504.    Named Plaintiff, FERNANDO WARREN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 11, 23-26, 30-33, 37-40, 44-52, 54-74, 214-227, and 498-502 as though fully set forth herein.

505.    Mr. Warren and members of the Missouri Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Missouri law wherein Defendants agreed to pay Mr. Warren and members of the Missouri Class a specified hourly rate for each hour worked.

506.    Despite Mr. Warren and members of the Missouri Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

507.    Defendants failure and ongoing refusal to pay Mr. Warren and members of the Missouri Class all wages owed for all work performed constitute a breach of contract pursuant to Missouri's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

508.   In the alternative to the breach of contract class claims, Mr. Warren and members of the Missouri Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

509.   The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Warren and members of the Missouri Class for the work they performed without compensation.

## **PRAYER FOR RELIEF ON COUNT XIX**

WHEREFORE, Named Plaintiff, FERNANDO WARREN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Missouri, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.   Designate this action as a class action on behalf of the proposed Missouri Class;

B.   Designate Mr. Warren as the representative of the Missouri Class;

157

C. Designate Mr. Warren's chosen counsel as counsel for the Missouri Class;

D. Enter judgment in favor of Mr. Warren and members of the Missouri Class for Breach of Contract;

E. Award Mr. Warren and members of the Missouri Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F. Award back pay to Mr. Warren and members of the Missouri Class, including a sum to compensate Mr. Warren and members of the Missouri Class for any increased tax liability on a lump-sum award of back pay;

G. Award Mr. Warren and members of the Missouri Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H. Award Mr. Warren and members of the Missouri Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I. Award Mr. Warren and members of the Missouri Class and the members of the Missouri Class any other appropriate equitable relief; and

J. Award any additional relief that this Court deems just and proper.

## COUNT XX

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE GEORGIA
### MINIMUM WAGE LAW
### *Failure to Pay Georgia Minimum Wage*
### (Wesley Worthy, Sr. and Georgia Class v. All Defendants)

510. Named Plaintiff, WESLEY WORTHY, SR., re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 12, 23-26, 30-33, 37-40, 44-52, 54-74, and 228-241 as though fully set forth herein.

511.     Mr. Worthy and the members of the Georgia Class were "employees" and Defendants were each an "employer" covered by the GMWL. Ga. Code Ann. § 34-4-3.1 (West)

512.     Pursuant to the minimum wage provisions of the GMWL, Defendants were and are obligated to pay Mr. Worthy and members of the Georgia Class an hourly wage at least equal to that required by the GMWL, $10.30 per hour ("Georgia Minimum Wage"). Ga. Code Ann. § 34-4-3 (West).  As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $7.25.

513.     Thus, Defendants have paid Mr. Worthy and the Georgia Class members substantially below the Georgia Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Mr. Worthy and the Georgia Class members the Georgia Minimum Wage for all hours worked violates the GMWL. *Id*.  Unpaid wages are, therefore, due and owing to Mr. Worthy and the Georgia Class members.

514.     In accordance with Section 34-4-6 of the GMWL, by reason of Defendants' actions, Mr. Worthy and members of the Georgia Class are entitled to compensatory damages, liquidated damages in an additional amount equal to one-

hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

515.    Defendants' failure and refusal to pay the Georgia Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XX**

WHEREFORE, Named Plaintiff, WESLEY WORTHY, SR., individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Georgia, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Georgia Class;

B.    Designate Mr. Worthy as representative of the Georgia Class;

C.    Designate Mr. Worthy's chosen counsel as counsel for the Georgia Class;

D.    Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Georgia Minimum Wage Law;

E.    Award back pay to Mr. Worthy and the members of the Georgia Class, including a sum to compensate Mr. Worthy and the members of the Georgia Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Mr. Worthy and the members of the Georgia Class in the maximum amount available under the Georgia Minimum Wage Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Worthy and the members of the Georgia Class;

H.      Award Mr. Worthy and the members of the Georgia Class pre-judgment and post-judgment interest available under the Georgia Minimum Wage Law;

I.      Award Mr. Worthy and the members of the Georgia Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**BREACH OF CONTRACT - GEORGIA**
*Failure to Pay Wages*
**(Wesley Worthy, Sr. and Georgia Class v. All Defendants)**

516.    Named Plaintiff, WESLEY WORTHY, SR., re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 12, 23-26, 30-33, 37-40, 44-52, 54-74, and 228-241 as though fully set forth herein.

517.    Mr. Worthy and members of the Georgia Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Georgia law wherein Defendants agreed to pay Mr. Worthy and members of the Georgia Class a specified hourly rate for each hour worked.

518.    Despite Mr. Worthy and members of the Georgia Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

519.    Defendants failure and ongoing refusal to pay Mr. Worthy and members of the Georgia Class all wages owed for all work performed constitute a breach of contract pursuant to Georgia's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

520.    In the alternative to the breach of contract class claims, Mr. Worthy and members of the Georgia Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

521.    The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Worthy and members of the Georgia Class for the work they performed without compensation.

## **PRAYER FOR RELIEF ON COUNT XXI**

WHEREFORE, Named Plaintiff, WESLEY WORTHY, SR., individually and on behalf of all others similarly situated, and all those opting into this lawsuit

162

who worked for Defendants within the State of Georgia, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Georgia Class;

B.      Designate Mr. Worthy as the representative of the Georgia Class;

C.      Designate Mr. Worthy's chosen counsel as counsel for the Georgia Class;

D.      Enter judgment in favor of Mr. Worthy and members of the Georgia Class for Breach of Contract;

E.      Award Mr. Worthy and members of the Georgia Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.      Award back pay to Mr. Worthy and members of the Georgia Class, including a sum to compensate Mr. Worthy and members of the Georgia Class for any increased tax liability on a lump-sum award of back pay;

G.      Award Mr. Worthy and members of the Georgia Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.      Award Mr. Worthy and members of the Georgia Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.      Award Mr. Worthy and members of the Georgia Class and the members of the Georgia Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXII

**(INDIVIDUAL AND CLASS ACTION CLAIMS)**

**BREACH OF CONTRACT - ALABAMA**
***Failure to Pay Wages***
**(Rufus Austin and Alabama Class v. All Defendants)**

522.    Named Plaintiff, RUFUS AUSTIN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 13, 23-26, 30-33, 37-40, 44-52, 54-74, and 242-254 as though fully set forth herein.

523.    Mr. Austin and members of the Alabama Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Alabama law wherein Defendants agreed to pay Mr. Austin and members of the Alabama Class a specified hourly rate for each hour worked.

524.    Despite Mr. Austin and members of the Alabama Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

525.    Defendants failure and ongoing refusal to pay Mr. Austin and members of the Alabama Class all wages owed for all work performed constitute a breach of contract pursuant to Alabama's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

526.    In the alternative to the breach of contract class claims, Mr. Austin and members of the Alabama Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

527.    The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Austin and members of the Alabama Class for the work they performed without compensation.

## PRAYER FOR RELIEF ON COUNT XXII

WHEREFORE, Named Plaintiff, RUFUS AUSTIN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Alabama, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Alabama Class;

B.    Designate Mr. Austin as the representative of the Alabama Class;

C.    Designate Mr. Austin's chosen counsel as counsel for the Alabama Class;

D.    Enter judgment in favor of Mr. Austin and members of the Alabama Class for Breach of Contract;

E.    Award Mr. Austin and members of the Alabama Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.    Award back pay to Mr. Austin and members of the Alabama Class, including a sum to compensate Mr. Austin and members of the Alabama Class for any increased tax liability on a lump-sum award of back pay;

G.    Award Mr. Austin and members of the Alabama Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.    Award Mr. Austin and members of the Alabama Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.    Award Mr. Austin and members of the Alabama Class and the members of the Alabama Class any other appropriate equitable relief; and

J.    Award any additional relief that this Court deems just and proper.

## COUNT XXIII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE SOUTH CAROLINA
### PAYMENT OF WAGES ACT
### *Failure to Pay Wages*
### (David Stiegelmeyer, II and South Carolina Class v. All Defendants)

528.   Named Plaintiff, DAVID STIEGELMEYER, II, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 14, 23-26, 30-33, 37-40, 44-52, 54-74, and 255-267 as though fully set forth herein.

529.   Defendants are each an "employer" as that term is defined under the SCPWA, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the SCPWA.  S.C. Code Ann. § 41-10-10.

530.   Individual Defendants are each an "employer" under the SCPWA because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Stiegelmeyer and members of the South Carolina Class in accordance with the requirements of the SCPWA.

531.   Mr. Stiegelmeyer and members of the South Carolina Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to the FLSA.

532.   Defendants have failed to pay Mr. Stiegelmeyer and members of the South Carolina Class their regular hourly rate of pay, as well as the mandated federal minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the FLSA.  Defendants have, therefore, failed to regularly pay Mr. Stiegelmeyer and members of the South Carolina Class for all earned wages from the date they were first employed, through and including the present, in violation of the SCPWA.

533.   Accordingly, wages are due and owing to Mr. Stiegelmeyer and members of the South Carolina Class pursuant to Sections 41-10-30 and Section 41-10-40 of the SCPWA.

534.   Defendants further violated the SCPWA through their failure to pay the Mr. Stiegelmeyer and members of the South Carolina Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 41-10-50 of the SCPWA.

535.   Defendants further violated the SCPWA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

536.   The total amount due to Mr. Stiegelmeyer and members of the South Carolina Class by Defendants constitutes wages under Section 41-10-10 of the SCPWA, and failure to pay the amount due constitutes a violation of the SCPWA.

537.   In accordance with Section 41-10-80 SCPWA, by reason of Defendants' actions, Mr. Stiegelmeyer and members of the South Carolina Class are entitled to liquidated damages in an additional amount equal to two-hundred percent (200%) of the full amount of the unpaid wages.

538.   The wages withheld from Mr. Stiegelmeyer and members of the South Carolina Class were not the result of any bona fide dispute.

539.   Mr. Stiegelmeyer and the South Carolina Class are entitled to all legal and equitable remedies available for violations of the SCPWA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the SCPWA.

### **PRAYER FOR RELIEF ON COUNT XXIII**

WHEREFORE, Named Plaintiff, DAVID STIEGELMEYER, II, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of South Carolina, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE

COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed South Carolina Class;

B.     Designate Mr. Stiegelmeyer as the representative of the South Carolina Class;

C.     Designate Mr. Stiegelmeyer's chosen counsel as counsel for the South Carolina Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the South Carolina Payment of Wages Act;

E.     Award back pay to Mr. Stiegelmeyer and the members of the South Carolina Class, including a sum to compensate Mr. Stiegelmeyer and the members of the South Carolina Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Mr. Stiegelmeyer and the members of the South Carolina Class in the maximum amount available under the South Carolina Payment of Wages Act;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Stiegelmeyer and the members of the South Carolina Class;

H.     Award Mr. Stiegelmeyer and the members of the South Carolina Class pre-judgment and post-judgment interest available under the South Carolina Payment of Wages Act;

I.     Award Mr. Stiegelmeyer and the members of the South Carolina Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XXIV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE VERMONT
### MINIMUM WAGE LAW
### *Failure to Pay Vermont Minimum Wage*
### (David Blanchard and Vermont Class v. All Defendants)

540.   Named Plaintiff, DAVID BLANCHARD, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 15, 23-26, 30-33, 37-40, 44-52, 54-74, and 268-281 as though fully set forth herein.

541.   Mr. Blanchard and the members of the Vermont Class were "employees" and Defendants were each an "employer" covered by the VMWL.  Vt. Stat. Ann. tit. 21, § 383 (West).

542.   Pursuant to the minimum wage provisions of the VMWL, Defendants were and are obligated to pay Mr. Blanchard and members of the Vermont Class an hourly wage at least equal to that required by the VMWL, $11.75 per hour ("Vermont Minimum Wage").  Vt. Stat. Ann. tit. 21, § 384 (West).

543.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $11.75

544.   Thus, Defendants have paid Mr. Blanchard and the Vermont Class members substantially below the Vermont Minimum Wage for certain hours

worked.  Defendants' failures and refusals to pay Mr. Blanchard and the Vermont Class members the Vermont Minimum Wage for all hours worked violates the VMWL.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Blanchard and the Vermont Class members.

545.   In accordance with Section 395 of the VMWL, by reason of Defendants' actions, Mr. Blanchard and members of the Vermont Class are entitled to compensatory damages, liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

546.   Defendants' failure and refusal to pay the Vermont Minimum Wage was willful, intentional, and not in good faith.

## PRAYER FOR RELIEF ON COUNT XXIV

WHEREFORE, Named Plaintiff, DAVID BLANCHARD, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Vermont, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Vermont Class;

B.      Designate Mr. Blanchard as representative of the Vermont Class;

C.      Designate Mr. Blanchard's chosen counsel as counsel for the Vermont Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Vermont Minimum Wage Law;

E.      Award back pay to Mr. Blanchard and the members of the Vermont Class, including a sum to compensate Mr. Blanchard and the members of the Vermont Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Mr. Blanchard and the members of the Vermont Class in the maximum amount available under the Vermont Minimum Wage Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Blanchard and the members of the Vermont Class;

H.      Award Mr. Blanchard and the members of the Vermont Class pre-judgment and post-judgment interest available under the Vermont Minimum Wage Law;

I.      Award Mr. Blanchard and the members of the Vermont Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXV

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

### BREACH OF CONTRACT - VERMONT
*Failure to Pay Wages*
**(David Blanchard and Vermont Class v. All Defendants)**

547.    Named Plaintiff, DAVID BLANCHARD, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 15, 23-26, 30-33, 37-40, 44-52, 54-74, and 268-281 as though fully set forth herein.

548.    Mr. Blanchard and members of the Vermont Class assert breach of contract claims because Defendants entered into valid and enforceable contracts with them pursuant to Vermont law wherein Defendants agreed to pay Mr. Blanchard and members of the Vermont Class a specified hourly rate for each hour worked.

549.    Despite Mr. Blanchard and members of the Vermont Class performing the agreed upon services for Defendants pursuant to the above enforceable contracts, Defendants breached these contracts by failing to pay them the agreed upon wages during the relevant time period.

550.    Defendants failure and ongoing refusal to pay Mr. Blanchard and members of the Vermont Class all wages owed for all work performed constitute a breach of contract pursuant to Vermont's law of contracts, quantum meruit, quasi-contract or unjust enrichment.

551.    In the alternative to the breach of contract class claims, Mr. Blanchard and members of the Vermont Class assert claims for quantum meruit/unjust enrichment on the basis that they provided valuable services to Defendants, that Defendants accepted those services, and that Defendants had reasonable notice that class members expected to be compensated for their services furnished to Defendants.

552.    The reasonable value of the services provided and not paid for by Defendants is the hourly rate Defendants agreed to pay Mr. Blanchard and members of the Vermont Class for the work they performed without compensation.

## **PRAYER FOR RELIEF ON COUNT XXV**

WHEREFORE, Named Plaintiff, DAVID BLANCHARD, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Vermont, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Vermont Class;

B.    Designate Mr. Blanchard as the representative of the Vermont Class;

175

C.      Designate Mr. Blanchard's chosen counsel as counsel for the Vermont Class;

D.      Enter judgment in favor of Mr. Blanchard and members of the Vermont Class for Breach of Contract;

E.      Award Mr. Blanchard and members of the Vermont Class damages, including lost wages, during the applicable statute of limitations period, in an amount to be shown at trial;

F.      Award back pay to Mr. Blanchard and members of the Vermont Class, including a sum to compensate Mr. Blanchard and members of the Vermont Class for any increased tax liability on a lump-sum award of back pay;

G.      Award Mr. Blanchard and members of the Vermont Class all compensatory, including compensation for any retirement and/or tax consequences, in an amount to be shown at trial;

H.      Award Mr. Blanchard and members of the Vermont Class pre- and post-judgment interest at the legal rate, in an amount to be shown at trial;

I.      Award Mr. Blanchard and members of the Vermont Class and the members of the Vermont Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXVI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE VIRGINIA
### MINIMUM WAGE ACT
### *Failure to Pay Virginia Minimum Wage*
### (William Harris and Virginia Class v. All Defendants)

553.    Named Plaintiff, WILLIAM HARRIS, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 16, 23-26, 30-33, 37-40, 44-52, 54-74, and 282-294 as though fully set forth herein.

176

554.    Mr. Harris and the members of the Virginia Class were "employees" and Defendants were each an "employer" covered by the VMWA. Va. Code Ann. § 40.1-28.9 (West).

555.    Pursuant to the minimum wage provisions of the VMWA, Defendants were and are obligated to pay Mr. Harris and members of the Virginia Class an hourly wage at least equal to that required by the VMWA, $9.50 per hour ("Virginia Minimum Wage"). Va. Code Ann. § 40.1-28.10 (West).

556.    As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $9.50

557.    Thus, Defendants have paid Mr. Harris and the Virginia Class members substantially below the Virginia Minimum Wage for certain hours worked. Defendants' failures and refusals to pay Mr. Harris and the Virginia Class members the Virginia Minimum Wage for all hours worked violates the VMWA. *Id.* Unpaid wages are, therefore, due and owing to Mr. Harris and the Virginia Class members.

558.    In accordance with Section 40.1-28.12 of the VMWA, by reason of Defendants' actions, Mr. Harris and members of the Virginia Class are entitled to the full amount of the unpaid wages, plus interest at eight per centum per annum

upon such unpaid wages awarded from the date said wages were due, and reasonable attorneys' fees associated with this action.

559.    Defendants' failure and refusal to pay the Virginia Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XXVI**

WHEREFORE, Named Plaintiff, WILLIAM HARRIS, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the Commonwealth of Virginia, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Virginia Class;

B.    Designate Mr. Harris as representative of the Virginia Class;

C.    Designate Mr. Harris' chosen counsel as counsel for the Virginia Class;

D.    Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Virginia Minimum Wage Act;

E.    Award back pay to Mr. Harris and the members of the Virginia Class, including a sum to compensate Mr. Harris and the members of the Virginia Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Mr. Harris and the members of the Virginia Class in the maximum amount available under the Virginia Minimum Wage Act;

G.      Award reasonable attorneys' fees, to Mr. Harris and the members of the Virginia Class;

H.      Award Mr. Harris and the members of the Virginia Class pre-judgment and post-judgment interest available under the Virginia Minimum Wage Act;

I.      Award Mr. Harris and the members of the Virginia Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXVII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE VIRGINIA
WAGE PAYMENT ACT**
*Failure to Pay Wages*
**(William Harris and Virginia Class v. All Defendants)**

560.    Named Plaintiff, WILLIAM HARRIS, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 16, 23-26, 30-33, 37-40, 44-52, 54-74, 282-294, and 554-559 as though fully set forth herein.

561.    Defendants are each an "employer" as that term is used under the VWPA, and are thereby subject to liability for wages, liquidated damages, litigation costs and expenses, and reasonable attorneys' fees for non-payment of salary and/or wages under the VWPA.

562.    Individual Defendants are each an "employer" under the VWPA because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Harris and members of the Virginia Class in accordance with the requirements of the VWPA.

563.    Mr. Harris and members of the Virginia Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $9.50 for all hours worked during any pay period, as provided for pursuant to both the FLSA and VMWA.

564.    Defendants have failed to pay Mr. Harris and members of the Virginia Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $9.50, for all hours worked during every pay period, in violation of the FLSA and VMWA.  Defendants have, therefore, failed to regularly pay Mr. Harris and members of the Virginia Class for all earned wages from the date they were first employed, through and including the present, in violation of the VWPA.

565.    Accordingly, wages are due and owing to Mr. Harris and members of the Virginia Class pursuant to Section 40.1-29 of the VWPA.

566.    Defendants further violated the VWPA through their failure to pay the Mr. Harris and members of the Virginia Class at their regular rate of pay for all

wages due for work they performed prior to their termination of employment pursuant to Section 40.1-29 of the VWPA.

567.    Defendants further violated the VWPA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

568.    The total amount due to Mr. Harris and members of the Virginia Class by Defendants constitutes wages under the VWPA, and failure to pay the amount due constitutes a violation of the VWPA.

569.    In accordance with Section 40.1-29 of the VWPA, by reason of Defendants' actions, Mr. Harris and members of the Virginia Class are entitled to liquidated damages in an additional amount equal to two-hundred percent (200%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

570.    The wages withheld from Mr. Harris and members of the Virginia Class were not the result of any bona fide dispute.

571.    Mr. Harris and the Virginia Class are entitled to all legal and equitable remedies available for violations of the VWPA, including, but not limited to, back

pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the VWPA.

## PRAYER FOR RELIEF ON COUNT XXVII

WHEREFORE, Named Plaintiff, WILLIAM HARRIS, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the Commonwealth of Virginia, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Virginia Class;

B.      Designate Mr. Harris as the representative of the Virginia Class;

C.      Designate Mr. Harris' chosen counsel as counsel for the Virginia Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Virginia Wage Payment Act;

E.      Award back pay to Mr. Harris and the members of the Virginia Class, including a sum to compensate Mr. Harris and the members of the Virginia Class for any increased tax liability on a lump-sum award of back pay;

F.      Award liquidated damages to Mr. Harris and the members of the Virginia Class in the maximum amount available under the Virginia Wage Payment Act;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Harris and the members of the Virginia Class;

H.     Award Mr. Harris and the members of the Virginia Class pre-judgment and post-judgment interest available under the Virginia Wage Payment Act;

I.     Award Mr. Harris and the members of the Virginia Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XXVIII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE OHIO
### MINIMUM WAGE LAW
#### *Failure to Pay Ohio Minimum Wage*
### (Michael Joyner and Ohio Class v. All Defendants)

572.     Named Plaintiff, MICHAEL JOYNER, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 17, 23-26, 30-33, 37-40, 44-52, 54-74, and 295-307 as though fully set forth herein.

573.     Mr. Joyner and the members of the Ohio Class were "employees" and Defendants were each an "employer" covered by the OMWL.  Ohio Rev. Code Ann. §§ 4111.14 and 4111.02 (West).

574.     Pursuant to the minimum wage provisions of the OMWL, Defendants were and are obligated to pay Mr. Joyner and members of the Ohio Class an hourly wage at least equal to that required by the OMWL, $8.80 per hour ("Ohio Minimum Wage").  Ohio Rev. Code Ann. § 4111.02 (West).

575.    As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $8.80.

576.    Thus, Defendants have paid Mr. Joyner and the Ohio Class members substantially below the Ohio Minimum Wage for certain hours worked. Defendants' failures and refusals to pay Mr. Joyner and the Ohio Class members the Ohio Minimum Wage for all hours worked violates the OMWL.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Joyner and the Ohio Class members.

577.    In accordance with Section 4111.14 of the OMWL, by reason of Defendants' actions, Mr. Joyner and members of the Ohio Class are entitled to, liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

578.    Defendants' failure and refusal to pay the Ohio Minimum Wage was willful, intentional, and not in good faith.

## PRAYER FOR RELIEF ON COUNT XXVIII

WHEREFORE, Named Plaintiff, MICHAEL JOYNER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Ohio, respectfully request that this

Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Ohio Class;

B.      Designate Mr. Joyner as representative of the Ohio Class;

C.      Designate Mr. Joyner's chosen counsel as counsel for the Ohio Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Ohio Minimum Wage Law;

E.      Award back pay to Mr. Joyner and the members of the Ohio Class, including a sum to compensate Mr. Joyner and the members of the Ohio Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Mr. Joyner and the members of the Ohio Class in the maximum amount available under the Ohio Minimum Wage Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Joyner and the members of the Ohio Class;

H.      Award Mr. Joyner and the members of the Ohio Class pre-judgment and post-judgment interest available under the Ohio Minimum Wage Law;

I.      Award Mr. Joyner and the members of the Ohio Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXIX

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE OHIO
### PROMPT PAY ACT
### *Failure to Pay Wages*
### (Michael Joyner and Ohio Class v. All Defendants)

579.    Named Plaintiff, MICHAEL JOYNER, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 17, 23-26, 30-33, 37-40, 44-52, 54-74, 295-307, and 573-578 as though fully set forth herein.

580.    Defendants are each an "employer" as that term is defined under the OPPA, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the OPPA. Ohio Rev. Code Ann. § 4113.15.

581.    Individual Defendants are each an "employer" under the OPPA because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Joyner and members of the Ohio Class in accordance with the requirements of the OPPA.

582.    Mr. Joyner and members of the Ohio Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $8.80 for all hours worked during any pay period, as provided for pursuant to both the FLSA and OMWL.

583.   Defendants have failed to pay Mr. Joyner and members of the Ohio Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $8.80, for all hours worked during every pay period, in violation of the FLSA and OMWL.  Defendants have, therefore, failed to regularly pay Mr. Joyner and members of the Ohio Class for all earned wages from the date they were first employed, through and including the present, in violation of the OPPA.

584.   Accordingly, wages are due and owing to Mr. Joyner and members of the Ohio Class pursuant to Section 4113.15 of the OPPA.

585.   Defendants further violated the OPPA through their failure to pay the Mr. Joyner and members of the Ohio Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 4113.15 OPPA.

586.   Defendants further violated the OPPA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

587.    The total amount due to Mr. Joyner and members of the Ohio Class by Defendants constitutes wages under Section 4113.15 of the OPPA, and failure to pay the amount due constitutes a violation of the OPPA.

588.    In accordance with Sections 4113.15 of the OPPA, by reason of Defendants' actions, Mr. Joyner and members of the Ohio Class are entitled to entitled to liquidated damages in an additional amount equal to six per cent of the amount of the claim still unpaid and not in contest or disputed or two hundred dollars, whichever is greater, plus costs and reasonable attorneys' fees associated with this action.

589.    The wages withheld from Mr. Joyner and members of the Ohio Class were not the result of any bona fide dispute.

590.    Mr. Joyner and the Ohio Class are entitled to all legal and equitable remedies available for violations of the OPPA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the OPPA.

## **PRAYER FOR RELIEF ON COUNT XXIX**

WHEREFORE, Named Plaintiff, MICHAEL JOYNER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Ohio, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL

FLEET   SERVICES,   INC.,   THE   STAGELINE   COMPANY,   VILANO EMPLOYMENT   SERVICES,   INC.,   DON   DORRIS,   LESLIE   DORRIS,   and BRENDA DORRIS, jointly and severally, as follows:

A.   Designate this action as a class action on behalf of the proposed Ohio Class;

B.   Designate Mr. Joyner as the representative of the Ohio Class;

C.   Designate Mr. Joyner's chosen counsel as counsel for the Ohio Class;

D.   Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Ohio Prompt Pay Act;

E.   Award back pay to Mr. Joyner and the members of the Ohio Class, including a sum to compensate Mr. Joyner and the members of the Ohio Class for any increased tax liability on a lump-sum award of back pay;

F.   Award liquidated damages to Mr. Joyner and the members of the Ohio Class in the maximum amount available under the Ohio Prompt Pay Act;

G.   Award   litigation   costs   and   expenses,   including,   but   not   limited   to, reasonable attorneys' fees, to Mr. Joyner and the members of the Ohio Class;

H.   Award Mr. Joyner and the members of the Ohio Class pre-judgment and post-judgment interest available under the Ohio Prompt Pay Act;

I.   Award   Mr.   Joyner   and   the   members   of   the   Ohio   Class   any   other appropriate equitable relief; and

J.   Award any additional relief that this Court deems just and proper.

## COUNT XXX

## (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE NEW HAMPSHIRE**
**MINIMUM WAGE LAW**
*Failure to Pay New Hampshire Minimum Wage*
**(Kelly Cote and New Hampshire Class v. All Defendants)**

591.    Named Plaintiff, KELLY COTE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 18, 23-26, 30-33, 37-40, 44-52, 54-74, and 308-320 as though fully set forth herein.

592.    Ms. Cote and the members of the New Hampshire Class were "employees" and Defendants were each an "employer" covered by the NHMWL. N.H. Rev. Stat. Ann. § 279:1.

593.    Pursuant to the minimum wage provisions of the NHMWL, Defendants were and are obligated to pay Ms. Cote and members of the New Hampshire Class an hourly wage at least equal to that required by the NHMWL, $7.25 per hour ("New Hampshire Minimum Wage").   N.H. Rev. Stat. Ann. § 279:21.

594.    As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $7.25.

595.   Thus, Defendants have paid Ms. Cote and the New Hampshire Class members substantially below the New Hampshire Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Ms. Cote and the New Hampshire Class members the New Hampshire Minimum Wage for all hours worked violates the NHMWL.  *Id.*  Unpaid wages are, therefore, due and owing to Ms. Cote and the New Hampshire Class members.

596.   In accordance with Section 279.29 of the NHMWL, by reason of Defendants' actions, Ms. Cote and members of the New Hampshire Class are entitled to the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

597.   Defendants' failure and refusal to pay the New Hampshire Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XXX**

WHEREFORE, Named Plaintiff, KELLY COTE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of New Hampshire, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed New Hampshire Class;

B.      Designate Ms. Cote as representative of the New Hampshire Class;

C.      Designate Ms. Cote's chosen counsel as counsel for the New Hampshire Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the New Hampshire Minimum Wage Law;

E.      Award back pay to Ms. Cote and the members of the New Hampshire Class, including a sum to compensate Ms. Cote and the members of the New Hampshire Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Ms. Cote and the members of the New Hampshire Class in the maximum amount available under the New Hampshire Minimum Wage Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Cote and the members of the New Hampshire Class;

H.      Award Ms. Cote and the members of the New Hampshire Class pre-judgment and post-judgment interest available under the New Hampshire Minimum Wage Law;

I.      Award Ms. Cote and the members of the New Hampshire Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXXI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE NEW HAMPSHIRE
### WAGE PAYMENT LAW
#### *Failure to Pay Wages*
### (Kelly Cote and New Hampshire Class v. All Defendants)

598.    Named Plaintiff, KELLY COTE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 18, 23-26, 30-33, 37-40, 44-52, 54-74, 308-320, and 592-597 as though fully set forth herein.

599.    Defendants are each an "employer" as that term is defined under the NHWPL, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the NHWPL.  N.H. Rev. Stat. Ann. § 275:42.

600.    Individual Defendants are each an "employer" under the NHWPL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Ms. Cote and members of the New Hampshire Class in accordance with the requirements of the NHWPL.

601.    Ms. Cote and members of the New Hampshire Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to both the FLSA and NHMWL.

602.    Defendants have failed to pay Ms. Cote and members of the New Hampshire Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the FLSA and NHMWL.  Defendants have, therefore, failed to regularly pay Ms. Cote and members of the New Hampshire Class for all earned wages from the date they were first employed, through and including the present, in violation of the NHWPL.

603.    Accordingly, wages are due and owing to Ms. Cote and members of the New Hampshire Class pursuant to Section 275:43 of the HHWPL.

604.    Defendants further violated the NHWPL through their failure to pay the Ms. Cote and members of the New Hampshire Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 275:44 NHWPL.

605.    Defendants further violated the NHWPL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

606.   The total amount due to Ms. Cote and members of the New Hampshire Class by Defendants constitutes wages under Section 275:42 of the NHWPL, and failure to pay the amount due constitutes a violation of the NHWPL.

607.   In accordance with Sections 275:44 and 275:53 of the NHWPL, by reason of Defendants' actions, Ms. Cote and members of the New Hampshire Class are entitled to liquidated damages in the amount of ten percent (10%) of the unpaid wages for each day except Sunday and legal holidays upon which such failure continues after the day upon which payment is required or in an amount equal to the unpaid wages, whichever is smaller, plus costs and reasonable attorneys' fees associated with this action.

608.   The wages withheld from Ms. Cote and members of the New Hampshire Class were not the result of any bona fide dispute.

609.   Ms. Cote and the New Hampshire Class are entitled to all legal and equitable remedies available for violations of the NHWPL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the NHWPL.

## **PRAYER FOR RELIEF ON COUNT XXXI**

WHEREFORE, Named Plaintiff, KELLY COTE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked

for Defendants within the State of New Hampshire, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed New Hampshire Class;

B.     Designate Ms. Cote as the representative of the New Hampshire Class;

C.     Designate Ms. Cote's chosen counsel as counsel for the New Hampshire Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the New Hampshire Wage Payment Law;

E.     Award back pay to Ms. Cote and the members of the New Hampshire Class, including a sum to compensate Ms. Cote and the members of the New Hampshire Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Ms. Cote and the members of the New Hampshire Class in the maximum amount available under the New Hampshire Wage Payment Law;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Ms. Cote and the members of the New Hampshire Class;

H.     Award Ms. Cote and the members of the New Hampshire Class pre-judgment and post-judgment interest available under the New Hampshire Wage Payment Law;

I.     Award Ms. Cote and the members of the New Hampshire Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XXXII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE MARYLAND
### WAGE AND HOUR LAW
### *Failure to Pay Maryland Minimum Wage*
### (Phevott Madden and Maryland Class v. All Defendants)

610.   Named Plaintiff, PHEVOTT MADDEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 19, 23-26, 30-33, 37-40, 44-52, 54-74, and 321-333 as though fully set forth herein.

611.   Mr. Madden and the members of the Maryland Class were "employees" and Defendants were each an "employer" covered by the MWHL. Md. Code Ann., Lab. & Empl. § 3-401 (West).

612.   Pursuant to the minimum wage provisions of the MWHL, Defendants were and are obligated to pay Mr. Madden and members of the Maryland Class an hourly wage at least equal to that required by the MWHL, $11.75 per hour ("Maryland Minimum Wage").  Md. Code Ann., Lab. & Empl. § 3-413 (West).

613.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the

197

hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $11.75.

614.    Thus, Defendants have paid Mr. Madden and the Maryland Class members substantially below the Maryland Minimum Wage for certain hours worked.  Defendants' failures and refusals to pay Mr. Madden and the Maryland Class members the Maryland Minimum Wage for all hours worked violates the MWHL.  *Id.*  Unpaid wages are, therefore, due and owing to Mr. Madden and the Maryland Class members.

615.    In accordance with Section 3-427 of the MWHL, by reason of Defendants' actions, Mr. Madden and members of the Maryland Class are entitled to liquidated damages in an additional amount equal to one-hundred percent (100%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

616.    Defendants' failure and refusal to pay the Maryland Minimum Wage was willful, intentional, and not in good faith.

## PRAYER FOR RELIEF ON COUNT XXXII

WHEREFORE, Named Plaintiff, PHEVOTT MADDEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Maryland, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL

FLEET   SERVICES,   INC.,   THE   STAGELINE   COMPANY,   VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Maryland Class;

B.    Designate Mr. Madden as representative of the Maryland Class;

C.    Designate Mr. Madden's chosen counsel as counsel for the Maryland Class;

D.    Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Maryland Wage and Hour Law;

E.    Award back pay to Mr. Madden and the members of the Maryland Class, including a sum to compensate Mr. Madden and the members of the Maryland Class for any increased tax liability on a lump-sum award of back pay;

F.    Award compensatory and liquidated damages to Mr. Madden and the members of the Maryland Class in the maximum amount available under the Maryland Wage and Hour Law;

G.    Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Madden and the members of the Maryland Class;

H.    Award Mr. Madden and the members of the Maryland Class pre-judgment and post-judgment interest available under the Maryland Wage and Hour Law;

I.    Award Mr. Madden and the members of the Maryland Class any other appropriate equitable relief; and

J.    Award any additional relief that this Court deems just and proper.

## COUNT XXXIII

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE MARYLAND WAGE PAYMENT
AND COLLECTION LAW**
*Failure to Pay Wages*
**(Phevott Madden and Maryland Class v. All Defendants)**

617.   Named Plaintiff, PHEVOTT MADDEN, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 19, 23-26, 30-33, 37-40, 44-52, 54-74, 321-333, and 611-616 as though fully set forth herein.

618.   Defendants are each an "employer" as that term is defined under the MWPCL, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the MWPCL.  Md. Code Ann., Lab. & Empl. § 3-501 (West).

619.   Individual Defendants are each an "employer" under the MWPCL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Madden and members of the Maryland Class in accordance with the requirements of the MWPCL.

620.   Mr. Madden and members of the Maryland Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $11.75 for all hours worked during any pay period, as provided for pursuant to both the FLSA and MWHL.

621.    Defendants have failed to pay Mr. Madden and members of the Maryland Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $11.75, for all hours worked during every pay period, in violation of the FLSA and MWHL.  Defendants have, therefore, failed to regularly pay Mr. Madden and members of the Maryland Class for all earned wages from the date they were first employed, through and including the present, in violation of the MWPCL.

622.    Accordingly, wages are due and owing to Mr. Madden and members of the Maryland Class pursuant to Section 3-501 of the MWPCL.

623.    Defendants further violated the MWPCL through their failure to pay the Mr. Madden and members of the Maryland Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 3-505 of the MWPCL.

624.    Defendants further violated the MWPCL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

625.    The total amount due to Mr. Madden and members of the Maryland Class by Defendants constitutes wages under Section 3-501 of the MWPCL, and failure to pay the amount due constitutes a violation of the MWPCL.

626.    In accordance with Sections 3-507.2 of the MWPCL, by reason of Defendants' actions, Mr. Madden and members of the Maryland Class are entitled to entitled to liquidated damages in an additional amount equal to two-hundred percent (200%) of the full amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

627.    The wages withheld from Mr. Madden and members of the Maryland Class were not the result of any bona fide dispute.

628.    Mr. Madden and the Maryland Class are entitled to all legal and equitable remedies available for violations of the MWPCL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the MWPCL.

## **PRAYER FOR RELIEF ON COUNT XXXIII**

WHEREFORE, Named Plaintiff, PHEVOTT MADDEN, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Maryland, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL

FLEET   SERVICES,   INC.,   THE   STAGELINE   COMPANY,   VILANO

EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and

BRENDA DORRIS, jointly and severally, as follows:

A.     Designate this action as a class action on behalf of the proposed Maryland Class;

B.     Designate Mr. Madden as the representative of the Maryland Class;

C.     Designate Mr. Madden's chosen counsel as counsel for the Maryland Class;

D.     Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Maryland Wage Payment and Collection Law;

E.     Award back pay to Mr. Madden and the members of the Maryland Class, including a sum to compensate Mr. Madden and the members of the Maryland Class for any increased tax liability on a lump-sum award of back pay;

F.     Award liquidated damages to Mr. Madden and the members of the Maryland Class in the maximum amount available under the Maryland Wage Payment and Collection Law;

G.     Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Madden and the members of the Maryland Class;

H.     Award Mr. Madden and the members of the Maryland Class pre-judgment and post-judgment interest available under the Maryland Wage Payment and Collection Law;

I.     Award Mr. Madden and the members of the Maryland Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## COUNT XXXIV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

**VIOLATION OF THE KANSAS
WAGE PAYMENT ACT**
*Failure to Pay Wages*
**(Michael Wegener and Kansas Class v. All Defendants)**

629.    Named Plaintiff, MICHAEL WEGENER, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 20, 23-26, 30-33, 37-40, 44-52, 54-74, and 334-346 as though fully set forth herein.

630.    Defendants are each an "employer" as that term is defined under the KWPA, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the KWPA.  Kan. Stat. Ann. § 44-313 (West).

631.    Individual Defendants are each an "employer" under the KWPA because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Wegener and members of the Kansas Class in accordance with the requirements of the KWPA.

632.    Mr. Wegener and members of the Kansas Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to both the KWPA.

633.   Defendants have failed to pay Mr. Wegener and members of the Kansas Class their regular hourly rate of pay, as well as the mandated federal minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the KWPA.  Defendants have, therefore, failed to regularly pay Mr. Wegener and members of the Kansas Class for all earned wages from the date they were first employed, through and including the present, in violation of the KWPA.

634.   Accordingly, wages are due and owing to Mr. Wegener and members of the Kansas Class pursuant to Section 44-314 of the KWPA.

635.   Defendants further violated the KWPA through their failure to pay the Mr. Wegener and members of the Kansas Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 44-315 of the KWPA.

636.   Defendants further violated the KWPA by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

637.   The total amount due to Mr. Wegener and members of the Kansas Class by Defendants constitutes wages under Section 44-313 of the KWPA, and failure to pay the amount due constitutes a violation of the KWPA.

638.    In accordance with Sections 44-315 of the KWPA, by reason of Defendants' actions, Mr. Wegener and members of the Kansas Class are entitled to liquidated damages in an additional amount of one percent (1%) of the unpaid wages for each day, except Sunday and legal holidays, upon which such failure continues after the eighth day after the day upon which payment is required or in an amount equal to one-hundred percent (100%) of the unpaid wages, whichever is less.

639.    The wages withheld from Mr. Wegener and members of the Kansas Class were not the result of any bona fide dispute.

640.    Mr. Wegener and the Kansas Class are entitled to all legal and equitable remedies available for violations of the KWPA, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the KWPA.

## <u>PRAYER FOR RELIEF ON COUNT XXXIV</u>

WHEREFORE, Named Plaintiff, MICHAEL WEGENER, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Kansas, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET   SERVICES,   INC.,   THE   STAGELINE   COMPANY,   VILANO

EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Kansas Class;

B.    Designate Mr. Wegener as the representative of the Kansas Class;

C.    Designate Mr. Wegener's chosen counsel as counsel for the Kansas Class;

D.    Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Kansas Wage Payment Act;

E.    Award back pay to Mr. Wegener and the members of the Kansas Class, including a sum to compensate Mr. Wegener and the members of the Kansas Class for any increased tax liability on a lump-sum award of back pay;

F.    Award liquidated damages to Mr. Wegener and the members of the Kansas Class in the maximum amount available under the Kansas Wage Payment Act;

G.    Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Wegener and the members of the Kansas Class;

H.    Award Mr. Wegener and the members of the Kansas Class pre-judgment and post-judgment interest available under the Kansas Wage Payment Act;

I.    Award Mr. Wegener and the members of the Kansas Class any other appropriate equitable relief; and

J.    Award any additional relief that this Court deems just and proper.

## COUNT XXXV

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE IOWA
### MINIMUM WAGE LAW
### *Failure to Pay Iowa Minimum Wage*
### (Ryan Pierce and Iowa Class v. All Defendants)

641.   Named Plaintiff, RYAN PIERCE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 21, 23-26, 30-33, 37-40, 44-52, 54-74, and 347-359 as though fully set forth herein.

642.   Mr. Pierce and the members of the Iowa Class were "employees" and Defendants were each an "employer" covered by the IMWL.  Iowa Code Ann. § 91D.1 (West).

643.    Pursuant to the minimum wage provisions of the IMWL, Defendants were and are obligated to pay Mr. Pierce and members of the Iowa Class an hourly wage at least equal to that required by the IMWL, $7.25 per hour ("Iowa Minimum Wage").  Iowa Code Ann. § 91D.1 (West).

644.   As set forth above, Defendants, by their conduct, forced their Truck Drivers to work specific pay periods without compensating them for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated state minimum wage of $7.25.

645.   Thus, Defendants have paid Mr. Pierce and the Iowa Class members substantially below the Iowa Minimum Wage for certain hours worked.

Defendants' failures and refusals to pay Mr. Pierce and the Iowa Class members the Iowa Minimum Wage for all hours worked violates the IMWL. *Id.* Unpaid wages are, therefore, due and owing to Mr. Pierce and the Iowa Class members.

646. In accordance with Section 91D.1 of the IMWL and Section 91A.8 of the IWPCL, by reason of Defendants' actions, Mr. Pierce and members of the Iowa Class are entitled to entitled to liquidated damages in an additional amount equal to the sum of five percent (5%) multiplied by the amount of any wages that were not paid multiplied by the total number of days, excluding Sundays, legal holidays, and the first seven days after the regular payday on which wages were not paid, not to exceed the amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

647. Defendants' failure and refusal to pay the Iowa Minimum Wage was willful, intentional, and not in good faith.

## **PRAYER FOR RELIEF ON COUNT XXXV**

WHEREFORE, Named Plaintiff, RYAN PIERCE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Iowa, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO

EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.      Designate this action as a class action on behalf of the proposed Iowa Class;

B.      Designate Mr. Pierce as representative of the Iowa Class;

C.      Designate Mr. Pierce's chosen counsel as counsel for the Iowa Class;

D.      Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Iowa Minimum Wage Law;

E.      Award back pay to Mr. Pierce and the members of the Iowa Class, including a sum to compensate Mr. Pierce and the members of the Iowa Class for any increased tax liability on a lump-sum award of back pay;

F.      Award compensatory and liquidated damages to Mr. Pierce and the members of the Iowa Class in the maximum amount available under the Iowa Minimum Wage Law;

G.      Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Pierce and the members of the Iowa Class;

H.      Award Mr. Pierce and the members of the Iowa Class pre-judgment and post-judgment interest available under the Iowa Minimum Wage Law;

I.      Award Mr. Pierce and the members of the Iowa Class any other appropriate equitable relief; and

J.      Award any additional relief that this Court deems just and proper.

## COUNT XXXVI

### (INDIVIDUAL AND CLASS ACTION CLAIMS)

### VIOLATION OF THE IOWA WAGE PAYMENT
### AND COLLECTION LAW
#### *Failure to Pay Wages*
### (Ryan Pierce and Iowa Class v. All Defendants)

648.    Named Plaintiff, RYAN PIERCE, re-alleges and incorporates by reference each and every allegation in the previous Paragraphs 21, 23-26, 30-33, 37-40, 44-52, 54-74, 347-359, and 642-647 as though fully set forth herein.

649.    Defendants are each an "employer" as that term is defined under the IWPCL, and are thereby subject to liability for wages, liquidated damages and reasonable attorneys' fees for non-payment of salary and/or wages under the IWPCL.  Iowa Code Ann. § 91A.2 (West).

650.    Individual Defendants are each an "employer" under the IWPCL because each of the Individual Defendants had control over Defendants' pay policies and participated in the decision to fail to pay Mr. Pierce and members of the Iowa Class in accordance with the requirements of the IWPCL.

651.    Mr. Pierce and members of the Iowa Class are entitled to be paid their regular hourly rate of pay for all hours worked, and no less than the mandated federal and state minimum wage of at least $7.25 for all hours worked during any pay period, as provided for pursuant to both the FLSA and IMWL.

652.     Defendants have failed to pay Mr. Pierce and members of the Iowa Class their regular hourly rate of pay, as well as the mandated federal and state minimum wage of at least $7.25, for all hours worked during every pay period, in violation of the FLSA and IMWL.  Defendants have, therefore, failed to regularly pay Mr. Pierce and members of the Iowa Class for all earned wages from the date they were first employed, through and including the present, in violation of the IWPCL.

653.     Accordingly, wages are due and owing to Mr. Pierce and members of the Iowa Class pursuant to Section 91A.3 of the IWPCL.

654.     Defendants further violated the IWPCL through their failure to pay the Mr. Pierce and members of the Iowa Class at their regular rate of pay for all wages due for work they performed prior to their termination of employment pursuant to Section 91A.3 of the IWPCL.

655.     Defendants further violated the IWPCL by failing to record and pay for all hours worked, including but not limited paying wages of at least the mandated federal and state minimum wage for all hours worked.  In the course of perpetrating these unlawful practices, Defendants also willfully failed to keep accurate records of all hours worked by their employees.

656.   The total amount due to Mr. Pierce and members of the Iowa Class by Defendants constitutes wages under Section 91A.2 of the IWPCL, and failure to pay the amount due constitutes a violation of the IWPCL.

657.   In accordance with Sections 91A.8 of the IWPCL, by reason of Defendants' actions, Mr. Pierce and members of the Iowa Class are entitled to entitled to liquidated damages in an additional amount equal to the sum of five percent (5%) multiplied by the amount of any wages that were not paid multiplied by the total number of days, excluding Sundays, legal holidays, and the first seven days after the regular payday on which wages were not paid, not to exceed the amount of the unpaid wages, plus costs and reasonable attorneys' fees associated with this action.

658.   The wages withheld from Mr. Pierce and members of the Iowa Class were not the result of any bona fide dispute.

659.   Mr. Pierce and the Iowa Class are entitled to all legal and equitable remedies available for violations of the IWPCL, including, but not limited to, back pay, liquidated damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and litigation costs, and other compensation pursuant to the MWPCL.

## PRAYER FOR RELIEF ON COUNT XXXVI

WHEREFORE, Named Plaintiff, RYAN PIERCE, individually and on behalf of all others similarly situated, and all those opting into this lawsuit who worked for Defendants within the State of Iowa, respectfully request that this Honorable Court enter Judgment in their favor and against Defendants, POSTAL FLEET SERVICES, INC., THE STAGELINE COMPANY, VILANO EMPLOYMENT SERVICES, INC., DON DORRIS, LESLIE DORRIS, and BRENDA DORRIS, jointly and severally, as follows:

A.    Designate this action as a class action on behalf of the proposed Iowa Class;

B.    Designate Mr. Pierce as the representative of the Iowa Class;

C.    Designate Mr. Pierce's chosen counsel as counsel for the Iowa Class;

D.    Declare and adjudge that Defendants' employment decisions, policies, practices, and/or procedures challenged herein are harmful and in violation of the Iowa Wage Payment and Collection Law;

E.    Award back pay to Mr. Pierce and the members of the Iowa Class, including a sum to compensate Mr. Pierce and the members of the Iowa Class for any increased tax liability on a lump-sum award of back pay;

F.    Award liquidated damages to Mr. Pierce and the members of the Iowa in the maximum amount available under the Iowa Wage Payment and Collection Law;

G.    Award litigation costs and expenses, including, but not limited to, reasonable attorneys' fees, to Mr. Pierce and the members of the Iowa Class;

214

H.     Award Mr. Pierce and the members of the Iowa Class pre-judgment and post-judgment interest available under the Iowa Wage Payment and Collection Law;

I.     Award Mr. Pierce and the members of the Iowa Class any other appropriate equitable relief; and

J.     Award any additional relief that this Court deems just and proper.

## JURY DEMAND

Named Plaintiffs and all members of the FLSA Collective Action Class and Rule 23 Class Actions demand a trial by jury on all issues triable to a jury as a matter of right.

Dated: <u>September 17, 2021</u>                    Respectfully submitted,

**WEISBERG CUMMINGS, P.C.**

<u>/**s**/ *Derrek W. Cummings*</u>
Derrek W. Cummings, PA. 83286
Admitted *Pro Hac Vice*

<u>/**s**/ *Larry A. Weisberg*</u>
Larry A. Weisberg, PA 83410
Admitted *Pro Hac Vice*

2704 Commerce Drive, Suite B
Harrisburg, PA 17110-9380
 (717) 238-5707

**GORDON & PARTNERS, P.A.**
Mark Hanson, FL 621651
4114 Northlake Blvd.
Palm Beach Gardens, FL 33420
(561) 799-5070

*Counsel for Plaintiffs*

215

## **CERTIFICATE OF SERVICE**

I, Larry A. Weisberg, Esquire, hereby certify that the foregoing **Amended Complaint** has been filed electronically and is available for viewing and downloading through the Court's Electronic Case Filing (ECF) System.  Upon the electronic filing of a pleading or other document, the Court's ECF System will automatically generate and send a Notice of Electronic Filing to all Filing Users associated with that case.  Transmission of the Notice of Electronic Filing constitutes service of the filed document.  Accordingly, service was made to all counsel of record in this matter.


September 17, 2021                              */s/ Larry A. Weisberg*
Date                                               Larry A. Weisberg