**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| JAMES MASSIE, et al.<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>POSTAL FLEET SERVICES, INC., et al.<br><br>　　　　Defendants. | Case No.: 3:21-cv-00618 |
| DEBBIE GAUGH, et al.<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>POSTAL FLEET SERVICES, INC., et al.<br><br>　　　　Defendants. | Case No.: 3:21-cv-00829 |
| JOSHUA PAIR, et al.<br><br>　　　　　　Plaintiffs,<br><br>　v.<br><br>POSTAL FLEET SERVICES, INC., et al.<br><br>　　　　Defendants. | Case No.: 3:23-cv-00785 |

**PLAINTIFFS' UNOPPOSED MOTION TO APPROVE
COLLECTIVE ACTION SETTLEMENT AND ATTORNEY FEES
WITH MEMORANDUM IN SUPPORT**

Named Plaintiffs, James Massie, Alexandria Chevalier, Keith Skeen, Antonio Ducksworth, Sr., Billy Cable, Dajuana Reynolds, Dantzler Cato, Jamal Allen, Johnson Brackins, Jonathan Kubichek, Fernando Warren, Wesley Worthy, Sr., Rufus Austin, David Stiegelmeyer, II, David Blanchard, William Harris, Michael Joyner, Kelly Cote, Phevott Madden, Michael Wegener, and Ryan Pierce, Debbie Gaugh, Zan Kirby, Joshua Pair, and William Garner ("Class Representatives"), respectfully move for approval of the Settlement reached in the above-captioned consolidated Fair Labor Standards Act ("FLSA") collective actions ("Litigation") against Defendants, Postal Fleet Services, Inc., The Stageline Company, and Vilano Employment Services, Inc., and any of its members, officers, directors, shareholders, employees, representatives, corporate parents, corporate siblings, subsidiaries, predecessors, successors, affiliates, and otherwise related entities (collectively the "Corporate Defendants") and Leslie Don Dorris, Brenda Dorris, and Craig R. Gregory (collectively the "Individual Defendants," and jointly with the Corporate Defendants as "Defendants"), who all concur in this Motion. Plaintiffs file this Motion on behalf of all individuals who have currently filed a Consent to Join the Litigation ("Opt-In Plaintiffs"), and any individual who has worked specific pay periods for Defendants without compensation at the mandated federal minimum wage, applicable state minimum wage, and/or contractually agreed upon hourly rate for any hours worked." (hereinafter referred to collectively with Class Representatives and Opt-In Plaintiffs as "Collective Members," "FLSA Collective," or "Plaintiffs").

To effectuate a binding release, FLSA settlements generally require judicial approval. *Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354 (11th Cir. 1982); *accord Copeland v.*

*ABB, Inc.*, 521 F.3d 1010, 1014 (8th Cir. 2008) (FLSA rights may be released by stipulated judgment). A copy of the Parties' Settlement Agreement and Release ("Settlement Agreement"), which has been signed by all parties, is attached hereto as Exhibit 1. Plaintiffs respectfully request that this Honorable Court enter an Order granting this motion and approving the Parties' Settlement.

### MEMORANDUM IN SUPPORT

Plaintiffs and Defendants have reached a settlement of this FLSA collective action that provides participating class members who file a Claim Form and Consent to Join Settlement monetary relief that is more than 100% of their alleged unpaid wages, based upon the hours they worked for which they were not paid, and payment of attorneys' fees and related expenses. This outcome is a fair and efficient resolution following over two (2) years of highly contested litigation, achieved by experienced counsel for both sides. The Settlement should be approved.

Settlement was reached after the Parties' investigation of the facts, production by Defendants of case-critical payroll and time records, written and verbal correspondence with Plaintiffs and other potential class members by Plaintiffs' counsel, and a lengthy period of negotiations between the parties to bring about a resolution. In order to settle this matter, Defendants have agreed to pay an amount up to $3,266,532.56_ "Gross Settlement Fund" (or "GSF"), inclusive of attorneys' fees and costs, to resolve all claims of the Collective Members for unpaid wages that were alleged in the Litigation. This amount represents the maximum amount that would be due if 100% of the Collective Members opt-in by timely submitting a Claim Form and Consent to Join Settlement. Only those Collective Members who timely opt-in will be eligible for a payout. The GSF shall be allocated as follows: (1) up to $2,441,461.92 shall be allocated to pay the claims of the Collective Members (the "Collective Settlement

Fund") who opt-in, (2) a fund of $11,250.00 shall be distributed among the Class Representatives as Service Awards, and   (3) as minimum of $610,304.44 and up to $ 813,820.64 (depending on how many Collective Members opt-in) , or such other amount approved by the Court, shall be allocated to pay the attorneys' fees, costs, including Settlement Administrator Costs.

Based on the time and payroll data exchanged by the parties, and their independent investigation of the relevant facts, Plaintiffs' counsel believes that $2,441,461.92 Collective Settlement Fund exceeds 100% of the value of the putative Collective Members' total claims for unpaid hours worked during the applicable time period, based upon the hours they worked for which they were not paid, as well as accrued and unused vacation, and health and welfare contributions, which is  free and clear of attorneys' fees and costs and Class Representatives' service awards.

## Facts and Procedural History

In *Massie, et al. v. Postal Fleet Services, Inc. et al.,* United States District Court, Middle District of Florida, Case No. 3:21-cv-00618 ("*Massie* Action"), Plaintiff James Massie, individually and on behalf of all others similarly situated, asserted a claim against  Corporate Defendants and Don and Brenda Dorris under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. §§ 333.101, *et seq.*, and Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 P.S. §§ 260.1, *et seq.*, alleging they failed to pay wages and compensable time at an hourly rate of at least equal to that of the Federal and Pennsylvania state minimum wage of $7.25 per hour.  The *Massie* Plaintiffs filed an Amended Complaint to add Plaintiffs and assert additional violations of other states' wage laws or for breach of contract, to wit, New Jersey, Kentucky, Mississippi, Tennessee, Nebraska,

Louisiana, Michigan, Texas, Minnesota, Missouri, Georgia, Alabama, South Carolina, Vermont, Virginia, Ohio, New Hampshire, Maryland, Kansas, and Idaho, to recover unpaid wages and compensable time at an hourly rate of at least equal to that of their applicable state or for the contractually agreed upon hourly rate. Defendants' Motion to Dismiss is pending and Plaintiffs' response to the Motion has been stayed pending the ongoing settlement negotiations.

In *Gaugh, et al. v. Postal Fleet Services, Inc. et al.,* United States District Court, Western District of Tennessee, Case No. 2:21-cv-02419 ("*Gaugh* Action"), Plaintiffs Debbie Gaugh and Zan Kirby, individually and on behalf of themselves and others similarly situated, asserted a claim against Defendants under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and a Tennessee state law claim for breach of contract, alleging that Defendants failed to pay wages and compensable time at an hourly rate of at least equal to that of the applicable federal minimum wage per hour and/or for the contractually agreed upon hourly rate.  On August 26, 2021, jurisdiction of the *Gaugh* Action was subsequently transferred to the Middle District of Florida and opened as Case No. 3:21-cv-00829. This case was stayed by the Court before a deadline for filing Defendants' responsive pleading was set by the Court.

In *Pair, et al. v. Postal Fleet Services, Inc. et al.,* United States District Court, Western District of Oklahoma, Case No. 5:21-cv-00759, ("*Pair* Action"), Plaintiff Joshua Pair, individually and on behalf of all others similarly situated, asserted a federal claim against the Corporate Defendants and Don and Brenda Dorris under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and Oklahoma state law claims under the Oklahoma General Wage Law ("OGWL"), 40 O.S. §§ 165.1 *et seq.*, and for breach of contract, alleging that Defendants failed to pay wages and compensable time at an hourly rate of at least equal to that of the applicable federal minimum wage per hour and/or for the contractually agreed upon hourly rate. Defendants

filed a responsive pleading. On July 7, 2023, jurisdiction of the *Pair* Action was subsequently transferred to the Middle District of Florida and opened as Case No. 3:23-cv-00785; and

All of the above-referenced cases and proceedings representing the Litigation are currently stayed and were either initiated within or transferred to the United States District Court, Middle District of Florida for jurisdictional purposes. In doing so, the Parties continued their efforts to reach a global resolution that would collectively settle all Plaintiffs' claims to avoid the costs and risks associated with prosecuting three (3) separate cases based on the same facts and circumstances. After ongoing cooperation during the afore-mention stays, the disclosure of employee timesheets and payroll data, engaging in numerous settlement discussions, and agreeing to terms on a previous settlement that was never consummated, the Parties have now agreed in principle to a Settlement on the terms set forth in the Settlement Agreement.

### Terms

The Parties have executed a Settlement Agreement that allows eligible members to participate in a settlement of the wage-and-hour claims asserted in this action. The FLSA Collective is defined as: "for any of the hours worked at their hourly rate of pay, thus refusing to pay these employees the mandated federal minimum or prevailing wage, applicable state minimum wage, applicable wage payment required under state law, and/or contractually agreed upon hourly rate." To the best of the knowledge and belief of Plaintiffs and Defendants, there are a maximum of 1,122 people in the FLSA Collective.

The Settlement Agreement provides for a GSA of up to $3,266,532.56, inclusive of attorneys' fees and costs, to resolve all claims of the Collective Members for unpaid wages alleged in the lawsuit and represents the maximum amount recoverable if 100% of the Collective Members opt-in. The GSA will be allocated as follows: (1) up to $2,441,461.92 shall be

allocated to pay the claims of the Collective Members (the "Collective Settlement Fund") who opt-in , (2)  a fund of $11,250.00 shall be distributed among the Class Representatives as Service Awards, and  (2) a minimum of $610,304.44 and up to $813,820.64 (depending on the number of Collective Members who opt-in), or such other amount approved by the Court, shall be allocated to pay  Class Counsel's attorneys' fees, costs, including Settlement Administrator Costs.

Pursuant to the terms of the Settlement Agreement, Counsel shall select a Settlement Claims Administrator to be responsible for administering the tasks enumerated in the Settlement Agreement.

The amount of settlement distributions to the members of the Collective Members who opt in to the class shall be based upon the hours they worked for which they were not paid, and each Collective Member's proportionate share of the NSF will be determined by the Settlement Claims Administrator pursuant to the following:

a.    **Federal Claims (Prevailing Wage/Minimum Wage/Health and Welfare, Vacation Pay)) and State Back Wage Claims.**  The Net Settlement Fund shall be allocated and distributed with a payment to each Settlement Class Member who opts- in the litigation by filing a formal Consent to Join with the court the individual amount that is specified in the Prevailing Wage and Health and Welfare column next to their Employee Identification Number as set forth in the Revised Back Wages Report.  The maximum payout if 100% of the drivers opt in will be $1,924,568.96 for prevailing wage and accrued but unused vacation and $294,941.88 for health and welfare for a combined total of $2,219,510.84, which represents the *pro rata* distribution of the claimed damages attributable to each Settlement Class Member.  This amount will be designated as prevailing

wage plus health and welfare and vacation and  will satisfy the federal claims under applicable federal law (including but not limited to the Fair Labor Standards Act   ("FLSA") and the McNamara – O'Hara Service Contract Act (SCA)) and will satisfy payment of the back wage, health and welfare and vacation portion of any state law claim.  These amounts represent a maximum payment if there is a 100% opt in/consent to the lawsuit.  The amount of the actual payments to be made will be determined by the number of individuals who actually opt in to the lawsuit by filing a Consent to Join form.  Only individuals who opt in/file a  Consent to Join will be paid and the amount of payment for each opt in/consent will be the specified amount allocated to that specific person in the Revised Back Wage Report.

    i. Any individuals eligible for payment under this Agreement who were previously paid in full for the unpaid wages or other damages sought in the Complaints (including the vacation and/or Health and Welfare portion) prior to distribution of the Net Settlement Fund by any of the Defendants, whether  payment is made through the U.S Department of Labor – Wage and Hour Division via a withholding order or otherwise or are otherwise paid in an administrative agency proceeding, other court proceeding, or voluntarily paid by any entity or person prior to their payment/distribution of an amount due under the terms of this Agreement, shall be deemed paid in full and not eligible for any further recovery. To the extent any individual was previously paid an amount less than they would be eligible to receive as a result of this

Settlement, the distribution to that individual will be reduced/set off by the amount they previously received from any of these other sources;

b. **State Extraordinary Damage Claims.**  Each Settlement Class Member who opts in by filing a formal Consent to Join with the court shall receive an additional payment of 10% (Column X)  of the amount that individual is owed under the federal claims (as identified in Section 14.a. and as set forth in the Revised Back Wage Report under columns  N and V),as consideration for the release of    all  state  law  damages  and  penalties  or  any  other claims/damages/penalties   for  non-payment  of  wages  that  they  may  have under  state  statutory,  contractual  or  other  common  law  (including  but  not limited  to  liquidated  damages,  penalties,  and  interest).    The  maximum recovery  for  the  state  law  extraordinary  damage  claims  will  not  exceed $221,951.08.   The  $221,951.08  amount  represent  a  maximum  payment  if there is a 100% opt in/filed of Consent to Join the lawsuit.  The amount of the total of the actual payments to be made under this section will be determined by  the  number  of  individuals  who  actually  opt  in/file  Consent  to  Join  the lawsuit(s).  Only individuals who opt in/file Consent to Join will be paid the additional 10%

The Settlement Claims Administrator shall allocate the amount  paid in columns N and V of the Revised Back Wage Report as taxable back wage income paid under IRS Form W-2 and subject to ordinary payroll withholdings under federal and state law, and the amounts paid in

columns X and Y of the Revised Back Wage Report constitute liquidated and/or other damages, which shall be taxable, non-wage income paid under IRS Form 1099.    Payments that are issued from the Collective Settlement Fund shall reflect all applicable withholdings and previously authorized deductions.

Plaintiffs' counsel engaged in numerous discussions with Plaintiffs and counsel for Defendants to determine the scope of Plaintiffs' claims and the defenses which would be asserted.  Based upon these discussions, Plaintiffs' counsel determined that questions existed with respect to the amount owed and the collectability for hours that were actually compensable. Furthermore, arguments were raised by Defendants that Defendants acted in good faith and would potentially be able to defend against an assessment of liquidated damages as well as limiting the class period to two years prior to the filing of the action.  Defendants also raised questions regarding jurisdiction and the viability of some of the Plaintiffs' state class claims. Despite these discussions, the settlement fund provides an amount in excess of full compensation to participating Collective Members, exclusive of attorneys' fees and costs, total claims for unpaid hours worked (and also includes unpaid vacation and health and welfare) during the applicable time period, based upon the hours they worked for which they were not paid.

Importantly, no putative Collective Members must participate, nor must any putative Collective Members submit anything to opt out of the Settlement in order to preserve any claim. Instead, only putative Collective Members who affirmatively participate by signing a Claim Form and Consent to Join Settlement will release their alleged claims.  Any uncashed portion of the  Settlement Fund will revert back to Defendants.

The Release provision is narrowly tailored to the wage claims asserted in the case, and applies only to those Collective Members who choose to accept the Settlement benefit by opting-

in.  The Release of Claims by Collective Members who choose to opt in to the settlement is defined in the Settlement Agreement, *in toto*, as follows:

> All Participating Collective Members executing and returning a Claim Form  and Consent to Join Settlement shall release the Defendants and any of its current or former owners, parents, subsidiaries, divisions, affiliated entities, members, shareholders, officers, directors, agents, principals, trustees, administrators, executors, attorneys, employees, insurers, reinsurers, predecessors, successors and assigns, both individually and in their official capacities (collectively "Releasees") from any and all  claims under the Fair Labor Standards Act and applicable state law during their employment with Defendants, they may have had at any time through the filing of the Litigation, including claims for any wages, interest on such claims, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses.

Only the Class Representatives are granting a general release of claims, which is granted in exchange for a Service Award, if approved.

The proposed notice to the putative Collective Members (Exhibit 2 attached hereto) fully and clearly informs them of the material terms of the Settlement, their rights to participate or not, the possible limitations on their rights should they not participate, the precise scope of the release, and the procedure to implement whatever decision each individual makes regarding the Settlement.

In addition to compensating Collective Members  who opt-in for their alleged unpaid wages, and unpaid  vacation and health and welfare the Settlement provides for a modest $11,250.00 in Service Awards to the Class Representatives, who were instrumental in pursuing this Litigation, and diligently worked with Plaintiffs' counsel to investigate the case and further the Litigation, all for the benefit of those employees who will recover under this Settlement.  The Service Awards will be payable from the GSF as follows:

- $1,500.00 each to James Massie, Debbie Gaugh, Zan Kirby, and Joshua Pair for a grand total of $6,000.00.

- $250.00 each to William Garner Alexandria Chevalier, Keith Skeen, Antonio Ducksworth, Sr., Billy Cable, Dajuana Reynolds, Dantzler Cato, Jamal Allen, Johnson Brackins, Jonathon Kubichek, Fernando Warren, Wesley Worthy, Sr., Rufus Austin, David Stiegelmeyer, II, David Blanchard, William Harris, Michael Joyner, Kelly Cote, Phevott Madden, Michael Wegener, and Ryan Pierce for a grand total of $5,250.00.

Procedurally,   within fourteen (14) days after the Effective Date of the Settlement Agreement,   Corporate Defendants will provide to Class Counsel the names and last known addresses of all Settlement Class Members as identified in the  Back Wages Report.  In addition, Corporate Defendants will provide Class Counsel with the Back Wages Report information containing the calculations for the Plan of Allocation, including, specifically, the  itemized total for back wages  calculated at prevailing wage (which includes any accrued but unpaid vacation), health and welfare, agreed upon state claim payments, and Service Awards  for each Settlement Class Member as provided for in Paragraph 14 of the attached Settlement Agreement.

Within thirty (30) days of Class Counsel receiving the information in paragraph 42, Class Counsel or their designee (at Class Counsel's  expense) shall be responsible for sending a Settlement Notice to each Settlement Class Member who has not already opted into this litigation by first-class U.S. mail, postage prepaid, which will include each Settlement Class Member's amount of his or her Settlement Award.  Settlement Class Members will have forty-five (45) days upon receipt of the Notice to return the Consent to Join if they wish to opt-in to the Settlement. Class Counsel shall  file the executed Consent to Join forms with the Court.

Collective Members will be given adequate time to request information and return the Notice Forms to opt-into the settlement.

## Argument

### I.    The Standard and the One-Step Procedure for FLSA Opt-In Settlement Approval

Because the Settlement has no binding effect on absent class members unless they affirmatively accept the benefits of the Settlement, it is governed by FLSA procedures rather than Rule 23, which is binding on absent class members unless they affirmatively opt *out* of the class. *Compare, e.g., Cooper v. Fed. Reserve Bank of Richmond*, 467 U.S. 867, 874 (1984) ("a judgment in a properly entertained class action is binding on class members in any subsequent action") *and Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (explaining purpose of Rule 23 notice is to advise class members they will be *bound* by judgment unless they request exclusion) *with Greenwald v. Phillips Home Furnishings Inc.*, 2009 WL 259744 at *4 (E.D. Mo., Feb. 3, 2009) ("A collective action under [the FLSA, 29 U.S.C.] § 216(b) differs from class actions brought under Rule 23 . . . .  A primary distinction is that under FLSA a similarly situated employee must 'opt in' to the collective action to be bound by it.").

In scrutinizing a settlement, "the primary focus of the court's inquiry in determining whether to approve the settlement of an FLSA collective action is not, as it would be for a Rule 23 class action, on due process concerns, but rather on ensuring that an employer does not take advantage of its employees in settling their claims for wages." *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2008) (internal citations omitted). Accordingly, courts grant final approval to FLSA opt-in settlements in a single step, rather than the Rule 23 procedure that utilizes preliminary approval, notice to the class members who will be bound unless they opt out, and final approval after an "opt out" period. *E.g., Hill v. World Wide Tech. Holding Co., Inc.*, 4:11CV02108 AGF, 2012 WL 5285927 (E.D. Mo. Oct. 25, 2012) (granting final approval of

FLSA settlement as to both the named plaintiff and all eligible FLSA collective class members who elect to opt-in to the settlement).

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Simmons v. Enterprise Holdings, Inc.*, 2012 WL 2885919 at \*1 (E.D. Mo. July 13, 2012) (citing *Lynn's Food Stores,* 679 F.2d at 1353). "Accordingly, as long as the Court is satisfied that a settlement reached in adversarial proceedings represents a fair and equitable compromise of a bona fide wage and hour dispute, the settlement may be approved." *Id.* Court review of an FLSA settlement is two-pronged. First, the Court must be satisfied that the settlement was the product of "contested litigation." Second, the Court must inquire as to whether the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. *Lynn's Food Stores,* 679 F.2d at 1353-1354. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Id.* at 1354. If the proposed settlement reflects a reasonable compromise of contested issues, the Court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

This Court should readily conclude the Parties' Settlement here is a reasonable resolution of a *bona fide* dispute in contested litigation.

## II.   The Putative Opt-In Collective Members are Similarly Situated

As a threshold matter, the Court may readily conclude that the employees eligible to participate in the settlement are "similarly situated" within the requirements of 29 U.S.C. § 216(b) of the FLSA, which is the standard for maintenance of an FLSA collective action. As defined by the Collective, included are all Truck Driver employees who were employed by

Defendants throughout the United States between May 16, 2021 and May 28, 2021, and who were not paid for their hours worked. Because of these key similarities, including job function and time frame, the Court may readily conclude the employees are "similarly situated" for purposes of effectuating this Settlement.

## III.    The Proposed Settlement Is the Product of Contested Litigation

The proposed Settlement is the product of contested litigation, and this conclusion is not altered by the Parties' ability to compromise this case for the purpose of settlement. In this Litigation, Plaintiffs presented detailed allegations regarding Defendants' policies and practices of requiring employees to work without compensation. In their responsive pleadings, Defendants denied Plaintiffs' material factual allegations and asserted numerous defenses that they argued would defeat Plaintiffs' FLSA and/or applicable state claims in whole or in part. Through exchange of time and payroll data and other relevant job-related information, the Parties extensively investigated Plaintiffs' claims. In addition to their factual investigation, the Parties also analyzed the various legal issues implicated in this case, including the standards for assessing and defending claims for liquidated damages under the FLSA. In addition to these factual and legal issues, the parties discussed potential collectability issues involving any judgment since the funds that comprise the unpaid wages in this Litigation are currently at issue in a separate legal/agency action between the United States Postal Service ("USPS") and Defendants Postal Fleet Services, Inc. and/or The Stageline Company ("USPS Litigation").

Accordingly, the settlement of this Litigation was achieved only after the exchange of key information on disputed fact issues and the vetting of the Parties' various positions and considerations through arms-length negotiation.

15

IV.    **The Proposed Settlement Reflects a Fair and Reasonable Resolution of a *Bona Fide* Dispute Between the Parties**

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the Parties under the FLSA. The second issue involves a review of the fairness and reasonableness of the proposed Settlement. Both are easily satisfied.

A.    **A *Bona Fide* Dispute Existed Between the Parties**

Plaintiffs allege Defendants violated the FLSA because they required the Collective Members to work without compensation. Defendants deny Plaintiffs' allegations as stated, contend that their policies and practices comply with all applicable laws, that the issues being litigated in the USPS Litigation are the cause of any failure to pay wages, and assert numerous affirmative and other defenses, including defenses regarding individual liability.

If Plaintiffs' allegations ultimately proved correct, Defendants would be faced with the prospect of a substantial monetary verdict potentially exceeding the amount of the Settlement, including for the possibility of additional statutory liquidated damages, as well as an obligation to pay the legal fees and costs incurred by Plaintiffs to prosecute the case through trial instead of the comparatively modest fees incurred to obtain a resolution at this juncture. If Defendants prevailed, then Plaintiffs would obtain no recovery of any kind. Likewise, should the Corporate Defendants ultimately prove judgment proof and/or other foreseeable collectability issues come to fruition, Plaintiffs could potentially receive nothing. The Parties' positions were staked out in the Parties' pleadings and throughout the course of the negotiations, and the Court should readily conclude a *bona fide* dispute between the parties existed.

### B.    The Proposed Settlement Is Fair and Reasonable

This Settlement was the product of arm's-length negotiations by experienced counsel and approximates the value of the putative Collective Members' total claims for unpaid wages during the applicable period, free and clear of attorney's fees and expenses and Class Representatives' Service Awards, plus an allowance for damages under state law.  Not only does the settlement amount for back wages exceed what would be due under the FLSA as back wages plus liquidated damages, but complies with the much higher prevailing wage amount that would be due under the McNamara-O'Hara Service Contract Act ("SCA") and includes unpaid vacation and health and welfare benefits.  The Settlement eliminates the inherent risks both sides would bear if this complex litigation continued to resolution by a jury.  As a compromise, and to provide the Corporate Defendants with the certainty of a ceiling on liability, the GSF is capped at $3,266,532.56, an amount that is based on 100% participation with all class members opting in and includes attorneys' fees and costs; however,  the actual payout being based on the allocated amounts due each member that actually opts-in. Plaintiffs' counsel supports this compromise, in view of the disparity of factual testimony anticipated amongst both the parties' witnesses, uncertainty in the law, uncertainty with collectability, and because the time upon which the NSF is based represents an amount in excess of the wages due as set forth in the Back Wages Report agreed to by the parties.  *See* Exhibit A to Settlement Agreement, Back Wages Report.  In sum, these are patently reasonable compromises in light of the risks and costs associated with prosecuting the case to a jury trial.  Under these circumstances, a presumption of fairness should attach to the Settlement.  *See Lynn's Food Stores*, 679 F.2d at 1354 (the adversarial nature of a litigated FLSA case indicates fairness).   Several specific factors confirm the Settlement's fairness and reasonableness:

### 1. Public Policy Favors Settlements

Public policy favors settlements. This is particularly true in complex cases such as this, where substantial resources can be conserved by avoiding the time, cost, and rigor of further protracted litigation. *See Lynn's Food Stores*, 679 F.2d at 1354 (public policy encourages settlement of FLSA litigation); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148 (8th Cir. 1999) ("A strong public policy favors [settlement] agreements, and courts should approach them with a presumption in their favor"). The Parties' settlement is a model of adversarial positions coupled with cooperative exchange of critical information to enable the Parties and their counsel to evaluate the claims and defenses without additional protracted expense and burden on the Court.

### 2. Substantial Obstacles Exist if the Litigation Continues, and the Settlement Offers Substantial Relief

The Parties disagree about the merits of Plaintiffs' claims and the viability of Defendants' defenses. If litigation continues, Plaintiffs would face many obstacles, including (i) the risk that the case would not be certified for a class or collective action; (ii) the risk that certain state claims would be dismissed; (iii) challenges to proving damages; and (iv) the inherent risks of a jury trial and/or collecting any jury award. The proposed Settlement brings substantial monetary value to each Class Member who elects to participate. Although the recovery at trial potentially could have been greater than sums received under the Settlement Agreement, it is also possible the recovery would have been less, or nothing at all.

Moreover, Plaintiffs would have to obtain collective action certification to present class-wide claims to a jury. Although Defendants concede the potential class members are similarly situated for settlement purposes, Defendants would have vigorously argued that in addition to the class waivers and arbitration agreements that several Plaintiffs have signed, various differences

in job locations, duties and responsibilities all preclude or limit collective/class action certification had litigation continued. Absent settlement, this issue remained uncertain.

In the face of these material disputes, it is significant that this Settlement brings class members meaningful monetary value and provides certainty regarding the outcome. *In re King Resources Co. Sec. Litig.*, 420 F. Supp. 610, 625 (D. Colo. 1976) ("the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future."). "In this respect, it has been held proper to take the bird in the hand instead of a prospective flock in the bush." *Oppenlander v. Standard Oil Co.*, 64 F.R.D. 597, 624 (D. Colo. 1974) (citing cases).

### 3. This Was a Complex and Lengthy Case

This case involved complex issues of fact and law which remain unanswered and would have to be resolved at or before trial, some of which would be revisited before this Court in Defendants' pending or additional anticipated motions to dismiss. Plaintiffs would need to compile and adduce documentary evidence, representative testimony, and possibly expert testimony sufficient to establish liability and damages for the entire collective and various state classes. Regardless of the outcome at trial, post-judgment appeals and collectability issues would be likely. Accordingly, the complexity and prospective expense and duration of litigation weigh in favor of approving the proposed Settlement.

### 4. The Parties and Their Counsel Support the Settlement

After thorough investigation of the facts and law, the Parties have gained a comprehensive knowledge of their respective claims and defenses. Additionally, the Parties have ample evidence to make an informed assessment of the proposed Settlement. "[T]he Court should also consider the judgment of counsel and the presence of good faith bargaining between

the contending parties. Courts have consistently refused to substitute their business judgment for that of counsel." *Id.* Based on their knowledge of the case and the applicable law, as well as their experience in similar FLSA actions, the Parties' counsel believe the Settlement is fair, reasonable, and adequate. The Parties respectfully suggest this Court should conclude the proposed Settlement reflects a fair resolution of a *bona fide* dispute under the FLSA and approve the Settlement.

## V.    The Named Plaintiffs Should Receive a Service Award

The time and dedication that an individual devotes to a lawsuit that inures to the common benefit of others warrants a service award "above and beyond what the typical class member is receiving." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1271 (D. Kan. 2006). Service awards "are particularly appropriate in the employment context [because] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005).

The Class Representatives in this Litigation substantially assisted counsel in achieving this Settlement on behalf of the Collective and should receive a Service Award. There is no question that the Collective as a whole has substantially benefited from the actions of each Class Representative. Without the Class Representatives' efforts, this case would not have been brought and this Settlement would not have been achieved. In light of these efforts, payment of the Service Awards as previously set forth above is amply justified. See, *Martinez v. Woodvalley Landscape*, 2021 U.S. Dist. LEXIS 30908, *4, ("The Court further approves the service award to Plaintiffs in the amount of $2,500 each. Such service awards have been widely accepted and approved in FLSA collective settlements").; *Su v. Elec. Arts, Inc.*, 2006 WL 4792780, *5 (M.D.

Fla. Aug. 29, 2006) (approving $10,000 service payment); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *12 (E.D. Pa. July 16, 2009) (approving a $20,000 service award to each of the three named Plaintiffs), and further citing, *Garett v. Morgan Stanley DW Inc.,* Civ. A. No. 04–1858 (S.D.Cal. Sept. 12, 2006) (order granting final approval) (awarding named plaintiffs enhancement awards of $20,000 each); *Weaver v. Edward D. Jones & Co., LP,* Civ. A. No. 08–529 (N.D. Ohio Jan. 5, 2009) (order granting final approval) (approving stipulation that included enhancement awards of $15,000 each to named plaintiffs); *see also Godshall,* 2004 WL 2745890, at *6 (awarding $20,000 to each of two named plaintiffs in employment class action involving $1,125,000 settlement fund).

## VI.    Plaintiffs' Counsel Should be Awarded Their Fees and Expenses.

Under the FLSA, plaintiffs are entitled to reasonable attorneys' fees spent in recovering unpaid wages. 29 U.S.C. § 216(b).  In cases involving a fee-shifting statute, the Supreme Court has expressed a preference that the parties agree to the amount of the fee: "A request for attorney's fees should not result in a second major litigation.  Ideally, of course, litigants will settle the amount of a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).  Following that advice, and desiring to avoid a second litigation over fees, the Parties have agreed to settle their dispute over the award of attorneys' fees, costs, and expenses.

The agreed attorneys' fees and costs amount of  a minimum of $610,304.44 and up to $813,820.64 (depending on how many members of the class opts-in) was negotiated by the parties independently of and after the parties reached a settlement as to the amount of recovery for the Plaintiff class members. Pursuant to the Settlement Agreement, each  member of the class who opts-in will receive an amount equal to the  full amount owed for the missed pay period under the prevailing wage, plus unpaid health and welfare and vacation benefits and an

additional 10% of that amount as compensation for any state law damages and penalties or any other claims/damages/penalties. Although, the attorney's fees and costs amount was calculated using a percentage of the recovery awarded to the Plaintiffs, it does not reduce the amount of recovery to each Plaintiff based on the above calculations and was negotiated separately and after the amount of the recovery for the Plaintiffs had been negotiated. [P]ursuant to *Bonetti v. Embarq Management Company*: [T]he best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement. 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009).

Although the Court must consider the reasonableness of any award of attorney's fees and costs, it is not required to conduct an in-depth analysis of the award unless it is unreasonable on its face. *Bodnar v. Gourmet Hut, Inc.*, No. 3:13-cv-709-J-34JRK, 2014 U.S. Dist. LEXIS 24380, 2014 WL 757981, at *3 n.4 (M.D. Fla. Feb. 26, 2014) (order adopting report and recommendation). *Vogenberger v. ATC Fitness Cape Coral, LLC*, 2015 U.S. Dist. LEXIS 195860, *6-7The attorney's fee amount in this case was calculated based on approximately 25% of the gross settlement fund. Given that this case involves the consolidation of three separate collective action lawsuits filed in three different states, the work of four separate law firms, protracted negotiations over an 18 month period, including resolving issues pertaining to the solvency and ability to pay of the Defendants, involves hundreds of Plaintiffs from numerous states and reaches and excellent result for the Plaintiffs, the amount of the fee sought is on its face reasonable. Since the fee sought is reasonable, it was negotiated separately and after the

recovery amount for the Plaintiffs had been determined and it does not decrease the amount of the recovery for the Plaintiffs, the court should approve the fee.  Pursuant to the prescription of the Supreme Court in *Hensley*, 461 U.S. at 437, the Court should not disturb Parties' settlement of the amount of Plaintiffs' counsel fees.

### Local Rule 3.01 (g) Certification

Pursuant to Local Rule 3.01 (g),  counsel for Plaintiffs has conferred with counsel for Defendants who has had an opportunity to review and revise this Motion and who agrees with the relief requested  herein.

### Conclusion

This Settlement was reached as a result of contested litigation and resolves a *bona fide* dispute between the Parties. The Parties engaged in thorough investigation of the facts and law and reached a Settlement that eliminates the Parties' respective risks and minimizes their expenses and the burden on the Court.  The Settlement is fair, reasonable, and adequate, and provides class members a Collective Settlement Fund which provides excellent value of the putative Collective Members' total claims for unpaid hours worked and unpaid vacation and health and welfare during the applicable time period, free and clear of attorneys' fees or expenses

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. approve the accompanying Settlement Agreement as a fair, reasonable and adequate resolution of this action  that is binding on  the parties thereto, including participating Collective Members;

2. certify the following settlement class for purposes of judgment on the settlement pursuant to Section 16(b):

any individual who was employed by any of the Defendants as a Truck Driver between May 16, 2021 and May 28, 2021 (The "Relevant Statutory Period") and has not been paid for the hours worked during that time period;

3. approve the accompanying Notice in accordance with the terms of the Settlement Agreement, and instruct the parties thereto and the Settlement Claims Administrator to perform all duties described in the Settlement Agreement;

4. implement an opt-in period for this matter in accordance with the Settlement Agreement and Notice;

5. appoint the law firms of Weisberg Cummings, P.C., Jackson, Shields, Yeiser, Holt, Owen & Bryant, Weinman & Associates, and Federman & Sherwood as lead counsel for purposes of representing Plaintiffs and all participating Collective Members during any and all further proceedings related to the settlement;

6. order the parties to abide by their obligations in the Settlement Agreement;

7. approve as fair and reasonable the Attorneys' Fees and Costs to Plaintiffs' Counsel and Service Award to the Class Representatives as agreed to in the Settlement Agreement;

8. retain jurisdiction over this action for purposes of overseeing any disputes arising from the implementation, administration, or enforcement of the settlement terms, including any claims and related issues applicable to the any and all of the Defendants in their individual capacity until the settlement is consummated; and

9. stay this action indefinitely and toll the statute of limitations against the Individual Defendants until the settlement is consummated and/or a default under paragraph 54 of the Settlement Agreement occurs.

DATED: 7.28.23

WEISBERG CUMMINGS, P.C., as Collective Counsel

By: _____

DATED: 7-28-2023

JACKSON, SHIELDS, YEISER, HOLT, OWEN & BRYANT, as Collective Counsel

By: _____
J. Russ Bryant

DATED: 7-28-23

WEINMAN & ASSOCIATES, as Collective Counsel

By: _____
Michael L. Weinman

DATED: _____

FEDDERMAN & SHERWOOD, as Collective Counsel

By: _____

25

9.  stay this action indefinitely  and toll the statute of limitations against the
Individual Defendants until the settlement is consummated  and/or a default under
paragraph 54 of the Settlement Agreement occurs.

DATED: _____        WEISBERG CUMMINGS, P.C., as Collective Counsel


                             By: _____

DATED: _____        JACKSON, SHIELDS, YEISER, HOLT,
                             OWEN & BRYANT, as Collective Counsel


                             By: _____

DATED: _____        WEINMAN & ASSOCIATES, as Collective Counsel


                             By: _____

DATED: 7/28/2023             FEDDERMAN & SHERWOOD, as Collective Counsel


                             By: _____

25